DENISE DRISCOL, B/N/F RICHARD DRISCOL AND RICHARD DRISCOL, INDIVIDUALLY *v*. DELPHI COMMUNITY SCHOOL CORP. JOYCE GHERE.

[No. 1271A277. Filed December 29, 1972. Rehearing denied January 10, 1973. Transfer denied June 8, 1973.]

*Bennett & Boehning* by *Robert E. Poynter*, of Lafayette, for appellants.

*Miller, Tolbert, Hirschauer & Wildman* by *Frank E. Tolbert*, of Logansport, for appellees.

WHITE, J.—This appeal attempts to question whether, on the plaintiffs' evidence and as a matter of law, defendants

are insulated from tort liability by a new doctrine of public immunity forecast in *Campbell* v. *State* (1972), 259 Ind. 55, 284 N.E.2d 733, 31 Ind. Dec. 739, by the *caveat* that " 'some vestige of the governmental immunity must be retained . . . [including an immunity] as to acts or omissions of government employees which . . . [are] "discretionary" ' ".[1] Procedurally the question arises thus:

> "At the close of Plaintiff's evidence, the Court sustained a Motion for judgment [for the defendants] on the evidence on the theory that school teachers and school corporations are not liable for injuries to their students resulting from a mistake of law or judgment; they are only responsible when guilty of 'corrupt motives.' In addition, the court held that a teacher must be guilty of some *active* negligence before liability attaches."[2]

"On appeal this court, in reviewing the trial court's action, may consider only the evidence and reasonable inferences

---

1. *Campbell, supra,* 284 N.E.2d at 737, 31 Ind. Dec. at 745, quoting Prosser, LAW OF TORTS § 131, p. 986 (4th ed. 1971). Although the case at bar was tried, appealed and fully briefed well before the Supreme Court handed down its opinion in *Campbell* our statement is nevertheless true because the statement attributed to the trial court as his reason for sustaining defendants' motion for judgment on the evidence is couched in the language of *Medsker* v. *Etchison* (1936), 101 Ind. App. 369, 371, 199 N.E. 429, 430. While we are unhappy with much of the language of the *Medsker* opinion, its rationale is that school officers acting within the scope of their duty are not responsible for acts or omissions which are "discretionary." What the *caveat* in *Campbell* seems to forecast is that this discretionary privilege of the officer or employee will shield his *superior* as well. (A proposition we found unnecessary to consider in *Snyder* v. *Mouser* (1971), 149 Ind. App. 334, 272 N.E.2d 627, 633, 26 Ind. Dec. 657, 665, since the negligence there charged was not "within the ambit of discretion.") See (for an excellent exposition of the new doctrine) a case note, "Sovereign Immunity in Indiana—Requiem?", 6 IND. LAW REV. 92 (1972).

2. Plaintiff-appellants' brief, p. 6.
The defendants' motion for judgment on the evidence was made and sustained pursuant to Trial Rule 50(A)(1), pertinent portions of which read:

> "Where all or some of the issues in a case tried before a jury . . . are not supported by sufficient evidence . . . the court shall withdraw such issues from the jury and enter judgment thereon. . . . A party may move for such judgment on the evidence:

> "(1) after another party carrying the burden of proof . . . has completed presentation of his evidence."

which may be drawn therefrom most favorable to the plaintiff-appellant, to determine if there is any evidence from which it may be reasonably inferred that the plaintiff-appellant was entitled to relief."[3]

"In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw."[4]

Application of these rules yields the following facts:

On December 2, 1969, Denise was a student at Delphi High School (which was operated by defendant school corporation in a building owned by the corporation and located in the city of Delphi).[5] On that date she attended a girls' "gym" class which was held in the basketball gymnasium of that school building during the third class period of the day,

---

3. *Hipskind, etc.* v. *General Industries, Inc.* (1963), 136 Ind. App. 647, 650, 194 N.E.2d 733, 734.

4. *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 680, 122 N.E.2d 734, 735.

5. There is no evidence of the facts enclosed within the parenthesis. We gleaned them from answers to discovery interrogatories and include them here because they are tacitly, if not expressly, conceded. Defendants' answer admits the complaint's allegation that "[o]n December 2, 1969 Denise Driscol was a student of the Delphi Community School Corporation, Defendant." Denise also testified that the "gym class was in the gym of the Delphi School Corporation." Nothing in the record expressly reveals the impliedly apparent governmental nature of the defendant Delphi Community School Corporation. Its name suggests that it is a "community school corporation" within the meaning of that term as the same is defined in Ind. Ann. Stat. § 28-3502(3), the same being section 3 of "The School Corporation Reorganization Act of 1959," Acts 1959, Ch. 202, § 3, also IC 1971, 20-4-1-3(3), which reads, in pertinent part: "The term 'community school corporation' shall mean a school corporation . . . formed under the provisions of this act. . . ." Section 9(1) of that Act provides that "[e]very community school corporation . . . is hereby declared to be a body corporate and politic . . .," to which § 9(2) adds, ". . . such community school corporation shall have all the powers, rights, duties and obligations of the school cities of the fifth class or any other higher class in which such school corporation would fall . . . [by the last U.S. census] if . . . organized as a school city. . . ." (As amended by Acts 1963, Ch. 390, § 1). We trust that the trial court possessed actual knowledge through which he was able, without fear of error, to take judicial notice that defendant corporation was a subdivision of the State. Since the arguments of both appellants and appellees are premised on that implied assumption we do not question it.

LAW LIBRARY
59
1976
University of ...

which third period was scheduled to begin at 10:15 A.M. and to end at 11:10 A.M. (During the morning, beginning at 8:15, each class period commenced fifteen minutes after the hour and ended ten minutes after the following hour, leaving but five minutes for students to move from class to class.) During that same third class period a boys' gym class was also meeting on the same basketball floor. (It appears that the playing floor area of the room was only slightly larger than the basketball court [presumably of standard high school size], which was outlined on it.) The boys' class, under the direction of a male teacher met at one end of the basketball court while the girls' class (under the direction of defendant, Miss Ghere) met at the other end. A canvas curtain across the center of the court separated the two classes. The girls' dressing room was located at a far corner of the boys' end of the playing floor.

During their gym class activities the girls wore what was described as "a gym suit and knee socks and tennis shoes." There is no evidence relative to the girls dressing for the class or of their getting from their dressing room to their end of the playing floor. They were nevertheless on the floor and engaged in a game called "bombardment"[6] when, at the customary time, approximately 11:05 A.M. (five minutes prior to the 11:10 A.M. scheduled end of the class period), they were released to go to their next class period activity. Miss Ghere released the class by saying, "All right girls you can go now." This was the third year Denise had been in Miss Ghere's gym class and during all that time Miss Ghere had released the class in this manner at approximately the same time, i.e., three to five minutes before the end of the class period. As had also been the practice during all of that time, all the girls immediately began to run towards the end

---

6. In her testimony Denise described the game of bombardment thus: "Well, you split the class up into two different teams and they stand on opposite sides and they've got several balls and they throw at each other and if you get hit by a ball then your [sic] out and the team that has the most players at the end of the game wins."

of the curtain which was on the side of the court nearest their dressing room, this being the only place they were permitted to pass to the boys' side of the gym floor. (There was an opening or gap in the center of the curtain where its two segments almost met. The girls were not allowed to go through that opening.) Also, as had been the three-year practice, the girls were not released until after the boys had left their end of the floor. While there was no testimony expressing any reason for that practice, common sense mandates the inference that its reason was the risk of injurious collisions if the girls were to attempt to cross the boys' floor while they were still exercising upon it.

At the time Miss Ghere told the girls they could go, Denise was on the side of the floor farthest from the end of the curtain around which the girls were required to pass in going to the dressing room. She immediately started to run towards that point and had gone only a short distance, perhaps three steps, when her feet became tangled with those of some other girl behind her (whose identity is unknown). She was unable to disentangle and fell to the floor with several other girls piling onto her. The entanglement was the only immediate cause of the fall. The gymnasium was well lighted. The floor was in good condition, dry, and free of any foreign substances. The fall broke Denise's left femur and cracked her right elbow. She spent considerable time in the hospital and in bed at home and it was several months before she was fully recovered. (Because no question of damages is involved we omit detailed facts concerning the injury, treatment, period of disability and extent of recovery.)

No one was injured in Miss Ghere's gym class during the three years Denise was a member of the class.

There were forty-five girls in the class. (Approximately the same number were members during the two previous years.) Upon being told by Miss Ghere that it was alright to go they were all required to go to the girls' dressing room, remove their gym clothes, store them in their lockers, take a shower,

don their regular school clothing, comb their hair, etc., and leave the gymnasium before the next class arrived and in time to get to their own next period activity before the tardy bell rang. It counted against their next class grade if they were tardy three times and they faced disciplinary problems if they were not out of the gym on time. Denise, however, was not in jeopardy of the tardy bell since her next period was devoted to lunch but the lunch room was crowded, the cafeteria line was long, and she had a band practice period which began at 12:10 P.M.

The dressing room area consisted of several rows of lockers with movable wooden benches between the rows of lockers. The shower area consisted of six shower stalls with one shower head per stall and each shower stall could accommodate two girls if they crowded, so that, at the most, twelve girls could shower at any one time. When all the girls were dressing, the dressing room was crowded and in fact was so crowded and disorganized that girls would use the rest room area to change clothes. Several girls were assigned to one locker and Denise shared her locker with two other girls in the same class. It was difficult for the girls to dress quickly because the dressing room was crowded; other girls were hurrying and the floors were slippery due to water from the showers. It often happened that the girls did not feel fully dressed when they left the gym because they had not had time to put on their hose or comb their hair.

Drawing against defendants all inferences which the jury might reasonably draw requires us to say that Denise fell because she and several other girls were running quite close together and that they were doing so because the time allowed them to get out of the gymnasium and to their next class period activity was, in respect to the facilities provided for showering, dressing, etc., so short that running was required.

As is permissible under present rules, plaintiffs' complaint alleges no specific acts (or omissions) of negligence. The pretrial order states:

"E.   The claim of plaintiffs is based upon their contentions that the defendants, Joyce Ghere and the Delphi Community School Corporation, were negligent in:

(1) Permitting too many girls to be in a gymnasium class (45).

(2) In failing to provide adequate shower facilities for said class. (Such shower facilities were limited to six stalls.)

(3) In failing to provide sufficient time so as to permit 45 girls to shower in six stalls (Plaintiffs would contend that the gymnasium instructor, defendant, Joyce Ghere, released the girls at two to three minutes past the hour and that said girls had to be dressed and out of class by ten minutes after the hour. Plaintiffs' contention is that such atmosphere proximately caused the injuries of plaintiff, Denise Driscoll [sic], a minor, and the damages sustained by Richard Driscoll [sic], her father)."

Plaintiffs make substantially the same contentions in their appellants' brief.

With respect to the first contention it was proved that there were forty-five girls in the class but there is absolutely no evidence that Miss Ghere had any part in fixing the size of the class. We see no way under any theory of negligence, and irrespective of any doctrine of immunity, that the jury could reasonably infer that Miss Ghere was "negligent in permitting too many girls to be in a gym class (45)."

Furthermore, there is no evidence from which the jury could reasonably have found how or why or by whom it was determined that there should be forty-five girls in the class rather than some lesser number. Thus there is no evidence from which the jury could reasonably have found that whoever fixed the class size had any practical choice in the matter. Which is to say there is no evidence from which the jury could reasonably have found that the class size was the result of a carelessly executed performance of a ministerial duty.

There is likewise no evidentiary basis for a jury finding that any person or persons, for whose acts or omissions the

defendant corporation might be held liable under the doctrine of *respondeat superior*, had both the power and duty to provide a greater number of shower facilities but negligently failed so to do.

This leaves the third contention as the only specification of negligence which may have some support in the evidence. It appears to be a reasonable inference that there may have been occasions when Miss Ghere could have given her girls some additional time to get ready to leave the gymnasium. However, it would not be reasonable to infer that her power to increase the time was limitless. Nothing tells us whether there were minimum class time requirements imposed on her by state or local regulation or policy, but we do know that so long as the boys' gym class was in session between the girls and their dressing room any attempt to send the girls through the boys' territory would involve obvious danger of injurious collisions. To suggest that the jury could have found that Miss Ghere was negligent for not subjecting the girls to that hazard to avoid the necessity of their running is to suggest that she exchange a danger of doubtful foreseeability for one of unquestionable foreseeability.

We have searched the record in vain for evidence of the time which elapsed between the time the boys left the floor and the time Miss Ghere told the girls they could go. There is evidence that Miss Ghere and her assistant were making out grade reports just before she dismissed the class; that a girl told her it was time to go; and, that she said to wait that she would be done in a minute. No testimony was offered, however, to establish whether the boys had already left the floor when the girl spoke to Miss Ghere, or how long they had been off the floor before Miss Ghere spoke the words which permitted the girls to leave for their dressing room. Assuming, *arguendo*, that Miss Ghere would be actionably negligent if she unreasonably delayed telling the girls to leave, the evidence is insufficient to sustain a reasonable inference that

she did so. There is no evidence from which it can reasonably be inferred that she did not dismiss them as soon as the boys left the floor.

To the question whether the teacher in charge of the boys' class could have dismissed his class earlier and thereby cleared the way for an earlier dismissal by Miss Ghere, the evidence yields not the slightest suggestion of an answer. The extent of his authority and the restrictions, if any, imposed upon him are wholly undisclosed. Nor is there any evidence from which it can reasonably be inferred that anyone in authority neglected an opportunity to remedy a dangerous situation.

We entertain grave doubts whether under any interpretation that can be put on this evidence Denise Driscol or any of her classmates were subjected to any *unreasonable* risk of injury. Certainly there is some remote risk of injury in all human existence and certainly in all locomotion. Denise could have fallen and injured herself while walking ever so slowly to the dressing room and was even more likely to have done so while quickly moving about the gymnasium playing bombardment or engaging in any other activity one might expect to find a high school physical education class engaged in. Certainly running in a gymnasium is not *ipso facto* unreasonable conduct even though it does subject the runner to greater risk of injury than walking. Running in groups and running in games is also more hazardous than running alone, yet group running and game running are not unusual activities in school gymnasiums. We therefore doubt that there is any *unreasonable* risk of injury involved in requiring high school gymnasium students to run to their dressing room, whatever may be the reason for the requirement, so long as there are no unusual conditions (such as grease or water on the floor) present. We hesitate to hold, however, that its reasonableness or unreasonableness might not have been made a jury question had there been evidence sufficient to sustain such a finding. But what we have already

said reveals our view that there is no evidence to support any inference that the necessity for the running or the conditions under which it was done is the result of any negligent execution of a ministerial function or duty. By the same token, there is no proof that class size, dressing room crowding, time allowed for dressing, etc., are conditions created by "discretionary" acts or omissions[7], although that explanation appeals to our vague common-sense notion of schools in general.

The trial court did not err in granting judgment for defendants on their motion at the conclusion of plaintiffs' evidence.

Judgment affirmed.

Buchanan, P.J., and Sullivan, J., concur.