Deborah NORMAN b/n/f, Raymond
Norman, Raymond Norman and
Eva Norman, Appellants,

v.

TURKEY RUN COMMUNITY SCHOOL
CORPORATION, Appellee.

Nos. 1–180A–1, 1080 S 403.

Supreme Court of Indiana.

Oct. 28, 1980.

Buchanan & Buchanan, Lebanon, Williams & Williams, Covington, for appellants.

Sacopulos, Crawford & Johnson, Gus Sacopulos and R. Steven Johnson, Terre Haute, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a transfer petition from the Court of Appeals, First District. The Fountain Circuit Court entered summary judgment in favor of Turkey Run Community School Corporation on October 9, 1979. Appellants Deborah Norman b/n/f Raymond Norman, Raymond Norman and Eva Norman appealed to the Court of Appeals which reversed the trial court and remanded the cause to the trial court for further proceedings. The Court of Appeals decision was by way of an unpublished memorandum opinion, *Norman v. Turkey Run Community School Corp.*, No. 1–180–A–1 (Ind.App. April 16, 1980).

The issue raised here is whether the trial court was presented with any genuine issue of a material fact, the existence of which would have made the entry of summary judgment under Ind.R.Tr.P. 56 inappropriate.

As revealed by the pleadings, answers to interrogatories, depositions and affidavits before the trial court, the facts show that

on September 2, 1976, Deborah Norman, a seven–year–old second grade student attending Turkey Run Elementary School, was injured when she collided with a six–year–old first grade student during the school's morning recess. Both students were running across the playground and both were not looking where they were running at the time they collided. Ten teachers were assigned to playground duty at this recess. The teachers were seven classroom teachers, a music teacher, a librarian and a speech teacher. This number exceeded the normal supervision requirements for recess periods. Seven or eight of the ten teachers assigned to the general supervision of the playground were present at the time the collision occurred. All ten were present some time during the recess period. At the time of the collision one had gone to the restroom and one was helping a child who had scraped his skin. These teachers were supervising one hundred eighty–eight children. There were two first grade classes, three second grade classes, one third grade class and some special education students. Two teachers were close to the children when they ran into each other. Gayle Vaught, a teacher, stated that she "just looked up and they ran into each other." She said she was unable to warn them. Sue North, another teacher, initially recalled the accident but later stated that she did not see the accident. The trial court found that the accident was instantaneous and that there was no opportunity for the teacher to warn the children. It also found that the School corporation discharged its duty to exercise reasonable care for Deborah Norman's well being.

The majority opinion from the Court of Appeals initially cites *Stuteville v. Downing,* (1979) Ind.App., 391 N.E.2d 629 at 630–31 for the standards for the granting of summary judgment. That opinion states as follows:

"Ind. Rules of Procedure, Trial Rule 56(C) states that summary judgment is appropriate only when 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' 'A fact is material if it tends to facilitate resolution of any of the issues either for or against the party having the burden of persuasion on that issue.' *Brandon v. State,* (1976) 264 Ind. 177, 180, 340 N.E.2d 756, 758. *See also Goethals v. DeVos,* (1977) Ind.App., 366 N.E.2d 673. 'However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation.' *Hayes v. Second National Bank of Richmond,* (1978) Ind. App., 375 N.E.2d 647, 650 (citations omitted). *See also Letson v. Lowmaster,* (1976) [168] Ind.App. [159], 341 N.E.2d 785. In other words, a factual issue is 'material' if it bears on the ultimate resolution of relevant issues, while a factual issue is 'genuine' if it is not capable of being conclusively foreclosed by reference to undisputed facts."

The burden is on the proponent of the motion to show that no genuine issues of fact exist, so in deciding whether to grant a summary judgment, facts set forth in the opponents' affidavit are taken as true, and depositions, admissions, answers to interrogatories, and testimony are liberally construed in favor of the opponent. *Cates v. Jolley,* (1978), Ind., 373 N.E.2d 877; *Swanson v. Shroat,* (1976) Ind.App., 345 N.E.2d 872.

The Court of Appeals determined that it would have been possible to draw inferences from the conduct and testimony of the teachers, Vaught and North, that they were inattentive in that they either failed to observe the students or failed to warn them after they observed a dangerous situation. The court determined that this was a genuine issue of material fact which existed and which should have barred summary judgment. It appears from our examination of the record in this cause that there is no genuine issue as to the material facts to be found in the pleadings, depositions, answers to interrogatories, or in the affidavits filed before the trial court in the summary judgment hearing.

The following facts are undisputed. Turkey Run Elementary School was a new facility with students enrolled from three old closed elementary schools. Playground equipment had not yet been installed and the playground area was covered with asphalt material. Deborah Norman was injured on the first day of school on the school playground at the 9:50 a.m., recess. Seven or eight teachers were present supervising approximately 188 students. The collision occurred about five minutes after the recess began on the playground area. A supervised recess period is generally accepted as a normal school procedure for elementary children. Running and playing tag are normal recess activities of young children. No oral or written directive was given to teachers to prohibit children from running on the playground during a supervised recess. There were no abnormal, dangerous or extra–hazardous conditions present prior to the collision. The only teacher who actually saw the collision, Gayle Vaught, testified that neither Deborah or the other student were looking where they were going; they were both looking behind them. They ran into each other and bumped heads. She looked up as they came together and she did not have time to warn them.

■ The basic elements of negligence and a discussion of their meaning in the context of a relationship of student and school personnel were fully set out in *Miller v. Griesel*, (1974) 261 Ind. 604, 308 N.E.2d 701. That case involved a fifth–grade student who brought an action alleging negligence against his teacher, the principal of his school and the school corporation, for injuries sustained during a recess period. The student was injured when, during a lunch hour period, his teacher was absent from the room. One of the pupils had a detonator cap which exploded when it was touched to two wires to batteries. The plaintiff suffered permanent damage to his eyes. In considering the legal standards to be applied this Court stated:

"In Indiana the tort of negligence is comprised of three elements: (1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Neal v. Home Builders Inc.* (1953) 232 Ind. 160, 111 N.E.2d 280; *Bailey v. L. W. Edison Charitable Foundation* (1972) Ind. App., 284 N.E.2d 141; See also Restatement Torts § 281. There are three questions of law to be decided by the trial court concerning these elements before it may submit the case to the jury. The first is whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff.

"The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *Neal v. Home Builders, supra.*

The relationship between the parties here is one of grammar school students and school personnel in the respective positions of teacher, principal, and school board. The specific and initial question of law presented, therefore, is whether the law of this State recognizes a duty for school authorities to exercise reasonable care and supervision for the safety of the children under their control. We believe that schools have such a responsibility and that the relationship of school pupils and school authorities should call into play the well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges. Restatement Torts 2d § 320; Prosser, Torts § 33, p. 172 (4th ed.1971).

The second question of law concerns what standard of care will the courts impose on this relationship once a duty is recognized. The traditional standard to

be applied is whether the defendants exercised their duty with the level of care that an ordinary prudent person would under the circumstances. *Pierce v. Horvath* (1968), 142 Ind.App. 278, 233 N.E.2d 811. The answers to the first two questions of law posed by this case therefore may be summed up by stating that the common law of this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority.

It should be emphasized here, however, that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them. The duty imposed by this legal relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their pupils; that while they are neither an insurer of safety nor are they immune from liability. It is not a harsh burden to require school authorities in some instances to anticipate and guard against conduct of children by which they may harm themselves or others. 38 A.L.R.3d 830.

The third question of law for the court here is one which courts must pass upon in every civil case; that is whether the evidence introduced by the plaintiff at trial is sufficient as a matter of law to enable the jury to find that the plaintiff has established the elements of the cause of action; in this case the elements of negligence outlined above...."

In summary, this case clearly states that this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority. In the present case, more teachers than usual were on the playground and all teachers were to generally supervise all children. The Court of Appeals erred in concluding that there were possible inferences to be drawn from the evidence that Vaught and North were inattentive either in failing to observe the students or in failing to warn them after they observed the dangerous situation developing. The only possible "dangerous situation developing" was the fact that students were running on the playground at recess. No teacher can observe every student at every instant on a playground. To look at one is to look away from another. Even if the evidence showed that one or both teachers were looking in another direction, it would not give rise to an inference of negligence on the part of either or both of them. The fact that two students happened to be running toward each other would not necessarily indicate peril to them until they became close enough to make it apparent that they were going to collide. Students often run toward each other, and in every direction, when they are on a playground. The evidence here was that when one of the teachers saw this happen, it was too late to give any warning and that the collision was instantaneous.

In *Driscol v. Delphi Community School Corp.*, (1972) 155 Ind.App. 56, 290 N.E.2d 769 the Court of Appeals considered an action by a student and her father against a gym teacher and school corporation for injuries sustained when the student fell while running, as she was required to do, to shower and dress after a gym class. The Court of Appeals commented on running at school and the risk of injury as follows:

"We entertain grave doubts whether under any interpretation that can be put on this evidence Denise Driscol or any of her classmates were subjected to any *unreasonable* risk of injury. Certainly there is some remote risk of injury in all human existence and certainly in all locomotion. Denise could have fallen and injured herself while walking ever so slowly to the dressing room and was even more likely to have done so while quickly moving about the gymnasium playing bombardment or engaging in any other activity one might expect to find a high school physical education class engaged in. Certainly running in a gymnasium is not *ipso facto* unreasonable conduct even though it does subject the runner to greater risk of injury than walking. Running in

groups and running in games is also more hazardous than running alone, yet group running and game running are not unusual activities in school gymnasiums. We therefore doubt that there is any *unreasonable* risk of injury involved in requiring high school gymnasium students to run to their dressing room, whatever may be the reason for the requirement, so long as there are no unusual conditions (such as grease or water on the floor) present."

In the present case, there was no indication that there was any event dangerous condition, dangerous instrumentality or special knowledge of students having a troublesome or mischievous nature being on the playground area known to the supervising teachers at the recess. The facts were uncontroverted that none of these conditions were present and that no such condition caused or contributed to the cause of this accident. The school personnel here clearly exercised ordinary and reasonable care for the safety of the children under their authority. Since running on the playground did not present a dangerous or unusual condition, under no set of facts presented to the jury could it be said that a duty arose on any of the teachers or all of them to pay particular attention to a particular student who was running. More than likely most of the children were running about at the same time or at one time or another. It would put an unreasonable burden on the teacher to find her wanting in her supervision if she were not observing a particular student at the precise moment a collision was imminent. A duty to warn contemplates an opportunity to know of the danger and to have time to communicate it. The facts were uncontroverted that this collision took place suddenly. To attempt to determine if closer attention by the teachers would have prevented this accident is to invite speculation. Even perfect attention to this incident might not have prevented it. There were also 186 other students needing attention at the same time. To hold the school personnel liable under the set of facts presented here would require them to be insurers of the safety of children in their care and impose strict liability for their safety. The settled law in Indiana is to the contrary. *Miller v. Griesel, supra.* Since there was no genuine issue of material fact, summary judgment was appropriate.

Transfer is granted, the decision of the Court of Appeals is vacated and the judgment of the trial court entering summary judgment in favor of the defendant–petitioner is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.