Holli DRAKE, By her next Friends and Parents, Doris and Donald DRAKE and Doris and Donald Drake, Individually, Appellants–Plaintiffs,

v.

MITCHELL COMMUNITY SCHOOLS, Mitchell Community Schools Board of Trustees, Kiwanis International, Inc., Mitchell Chapter and its Board of Directors, and First National Bank of Mitchell, Appellees–Defendants.

No. 47A01–9309–CV–290.

Court of Appeals of Indiana, First District.

Feb. 2, 1994.

Jay D. Allen, Salem, for appellants-plaintiffs.

Robert J. Doyle, Stewart Due Miller & Pugh, Indianapolis, for appellee-defendant, Mitchell Community Schools, Mitchell Community School Bd. of Trustees.

Mark R. Smith, Smith & Bemenderfer, Indianapolis, for appellee-defendant, First Nat. Bank of Mitchell.

ROBERTSON, Judge.

Plaintiffs–Appellants Holli Drake (a minor) and her parents, Doris and Donald Drake [Drake], appeal the summary judgment entered in favor of the Defendants–Appellees Mitchell Community Schools, Mitchell Community School Board of Trustees [School], and the First National Bank of Mitchell [Bank], in the Drakes' lawsuit to recover for injuries Holli sustained by contracting the disease of histoplasmosis from pigeon droppings while preparing for and participating in a Halloween "Haunted House" fund-raising event co-sponsored by the School and co-defendant Kiwanis International, Inc. [Kiwanis], which was held at a grain elevator owned by the Bank. Kiwanis has not sought to appeal the denial of its motion for summary judgment. Drake raises two issues, one pertaining to each appellee. Both appellees have submitted briefs, each pertaining to its own defense to the Drakes' claim. We reverse the summary judgment in favor of the School and affirm the summary judgment in favor of the Bank.

## FACTS

The facts in the light most favorable to nonmovant Drake indicate that in 1981, the Bank acquired ownership of an old grain elevator in downtown Mitchell, Indiana. Since acquiring the grain elevator, the Bank has permitted the Kiwanis to use it each year in connection with an annual Halloween fund raising event as a "haunted house" (or more accurately, as a "haunted grain elevator"). The Bank has always permitted the Kiwanis to use the grain elevator free of charge.

In the fall of 1990, the Kiwanis again borrowed the grain elevator. The Kiwanis assumed sole responsibility to complete any necessary "clean up" of the grain elevator before using it as the haunted house. Kiwanis approached the School and requested the student council to assist in putting on the event. The student council agreed to participate, and the Kiwanis and the student council agreed to split the profits on a 50/50 basis.

The Bank was not paid for the use of the grain elevator, nor was the Bank to share in any profits.

The advisor of the student council, Cassandra Wheatly (a teacher at the School), was aware that the grain elevator was potentially unsafe and could pose a danger to the students' health. Specifically, Wheatly anticipated that the students could be exposed to histoplasmosis in the grain elevator. Wheatly was knowledgeable about the disease and its causes having contracted it herself while in college. Wheatly requested that the grain elevator be inspected to make sure it was safe for the students. Wheatly herself participated in an inspection and noted its dirty condition and the presence of pigeon droppings. Wheatly insisted that the Kiwanis clean the building before the students entered it.

A member of the Kiwanis also inspected the grain elevator, observed pigeon droppings, and was concerned that persons in the grain elevator would be exposed to histoplasmosis. Another member of Kiwanis volunteered to clean the grain elevator with a shop vacuum cleaner.

Holli Drake participated on the School's student council as an extracurricular activity. She volunteered to make decorations for the haunted house. She was to use her imagination and her own creativity to come up with ideas and to construct the decorations. Holli entered the grain elevator to make decorations before the Kiwanis had gotten around to cleaning the building. The grain elevator was extremely dusty and dirty. Pigeon droppings were visible on the floor. While the students were constructing the decorations, the volunteer from Kiwanis arrived and began to vacuum the building. Holli and her friends cut out ten styrofoam tombstones, painted them, and placed them as decorations inside the grain elevator. Holli also helped clean the grain elevator by sweeping the ramp with a broom. Nevertheless, the grain elevator was still very dusty when the actual event was held. Holli participated in the actual event by hiding in a plastic coffin and jumping out periodically in order to scare people.

Several days after the haunted house program was held, Holli contracted a severe case of histoplasmosis as a result of being exposed to pigeon droppings in the grain elevator. Her illness necessitated hospitalization, including a transfer to Riley Children's Hospital in Indianapolis. Holli's family incurred substantial medical bills and other expenses in connection with her treatment.

## DECISION

At the outset, we set out our well-settled standard for the review of summary judgment as follows:

> The party appealing from the grant of summary judgment must persuade the appellate tribunal that the judgment erroneously determined that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). Thus, the reviewing appellate court faces the same issues that were before the trial court and follows the same process.... The trial court's determination must be carefully scrutinized on appeal to assure that the non-prevailing party is not improperly prevented from having his day in court. In considering the motion for summary judgment, the contents of all pleadings, affidavits and testimony are liberally construed in the light most favorable to the non-moving party. Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial.

*Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365–6 (Citations omitted).

### I.

Whether summary judgment was appropriately entered in favor of the School?

The School sought (and obtained) protection under a provision of the Indiana Tort Claims Act pertaining to governmental immunity. Specifically, the School has relied upon Ind.Code 34–4–16.5–3 which reads:

> A governmental entity or an employee acting within the scope of the employee's

employment is not liable if a loss results from:

\*    \*    \*    \*    \*    \*

(11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property ... contains a hazard to health or safety.

The Indiana Tort Claims Act is in derogation of common law and must be strictly construed against limitations on the claimant's right to bring suit. *Hinshaw v. Board of Commissioners of Jay County* (1993), Ind., 611 N.E.2d 637.

The Drakes concede the School is immune from liability for damages stemming from any duty it may have had to inspect the grain elevator under the above statute. However, the Drakes assert that the School, having specific knowledge that the grain elevator posed a risk of histoplasmosis independent of any inspection, had the duty to warn or otherwise protect the students against exposure to histoplasmosis. We agree.

■ Indiana law imposes the duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority. *Norman v. Turkey Run Community School Corporation* (1980), 274 Ind. 310, 315, 411 N.E.2d 614, 617. School authorities have the duty to exercise reasonable care for the safety of the children under their tutelage. *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154. School authorities must exercise that level of care for their students' safety that an ordinary prudent person would exercise under the same or similar circumstances. *Id.* However, schools are not intended to be insurers of their students' safety and are not strictly liable to students who suffer injuries. *Id.*

In *Norman,* 411 N.E.2d 614, a seven-year-old student was injured when she collided with another student while both were running on the playground at recess. Our supreme court held:

The school personnel here clearly exercised ordinary and reasonable care for the safety of the children under their authori-

ty. Since running on the playground did not present a dangerous or unusual condition, under no set of facts presented to the jury could it be said that a duty arose on any of the teachers or all of them to pay particular attention to a particular student who was running. More than likely most of the children were running about at the same time or at one time or another. It would put an unreasonable burden on the teacher to find her wanting in her supervision if she were not observing a particular student at the precise moment a collision was imminent. A duty to warn contemplates an opportunity to know of the danger and to have time to communicate it.

274 Ind. at 317, 411 N.E.2d at 618.

■ As noted above, immunity under the Indiana Tort Claims Act is to be strictly construed against limiting a claimant's right to bring suit. *Hinshaw,* 611 N.E.2d 637. Accordingly, although the School is immune under I.C. 34–4–16.5–3(11) for making an inadequate or negligent inspection of the grain elevator, the blanket immunity provided for inspections under this section cannot be stretched far enough to cover the School for any breach of duty owed to the children independent of an inspection.

In the present case, the Drakes' injuries were not caused by any failure to make an inspection or by an inadequate or negligent inspection. The inspection revealed that the grain elevator posed a risk to the students' health.

Moreover, Wheatly, the School's student council advisor, was aware, independent of any inspection, that the grain elevator posed a danger to the health of the students through exposure to histoplasmosis. Wheatly had the time and opportunity to communicate this danger to her students and advise or require them to take precautions against exposure to the disease. For example, the students could have been forbidden to enter the building before it had been cleaned or could have been required to wear dust masks until the elevator was cleaned.

Under the particular facts of this case, the School's knowledge of the specific danger in question, and accordingly, its duty to exer-

cise reasonable care to protect its students from this danger, was independent of any duty it may have had to inspect the grain elevator. A reasonable jury could find the School breached its duty to exercise reasonable care to warn the students and/or protect them from a known danger, exposure to histoplasmosis. Therefore, we reverse the summary judgment in favor of the School and remand for trial.

## II.

Whether summary judgment was appropriately entered in favor of the Bank?

■ The Bank sought (and obtained) refuge under the Indiana Recreational Use Statute [IRUS], Ind.Code 14–2–6–3, which reads:

> Any person who goes upon or through the premises including, *but not as a limitation,* lands, caves, waters, and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sightsee, *or for any other purposes,* without the payment of monetary consideration, or with the payment of monetary consideration directly or indirectly on his behalf by an agency of the state or federal government, is not thereby entitled to any assurance that the premises are safe for such purpose. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of any other persons using such premises. The provisions of this section shall not be construed as affecting the existing case law of Indiana of liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to invited guests nor shall this section be construed as to affect the attractive nuisance doctrine. Nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to persons or property caused by the malicious or illegal acts of the owner or occupant.

(Emphasis supplied.) The purpose of the IRUS is to encourage private landowners to open up their premises for recreational use.

*Reed v. United States,* (N.D.Ind.1984), 604 F.Supp. 1253.

■ Drake first asserts the IRUS will not protect the Bank under the present circumstances because Holli was not on the premises for a recreational purpose, but was instead at the grain elevator for a charitable or fund raising purpose. The Drakes concede that "the activity at the grain elevator may have been pleasurable and some recreational enjoyment may have been derived." (Drakes' brief p. 20.)

The IRUS does not contain the term "recreational activities" in its text. We acknowledge that we are not to add terms and requirements to a statute when the legislature has purposely omitted a term or requirement. *See Schwartzkopf v. State ex rel. Fettig* (1965), 246 Ind. 201, 204 N.E.2d 342. Our general assembly may very well have purposely omitted the term "recreational activities" to avoid "questions of semantics" similar to the one in the case at bar regarding the definition of, or the nature of "recreational activities." Nevertheless, for the purposes of this opinion, we will assume that the IRUS only applies in the context of the recreational use of land.

The IRUS specifically states that the recreational purposes listed in the statute are not a limitation to the kinds of purposes for which a landowner's liability is limited under the statute. We have been cited to no authority, nor are we aware of any, that excludes charitable or fund-raising activities from the "for any other purpose" language of the IRUS. The case of *Kniaz v. Benton Borough* (1988), 112 Pa.Cmwlth. 416, 535 A.2d 308 is instructive. In *Kniaz,* a bingo game was conducted in order to raise funds for a volunteer fire department. The plaintiff, who was playing bingo, suffered injury when the bench on which she was seated suddenly overturned. 535 A.2d at 309. The volunteer fire department obtained summary judgment under Pennsylvania's Recreational Use Statute. On appeal, the plaintiff argued that her participation in a bingo game was not a "recreational activity." The *Kniaz* court disagreed and affirmed summary judgment, holding:

On appeal, counsel for the plaintiff here has argued astutely that the conduct of a bingo game by a volunteer fire company constituted something other than a recreational activity, and that the Recreational Land Act is therefore inapplicable because no "recreational purposes" were involved. However, even though the volunteer fire company doubtless conducted its bingo game at least partly for fund-raising purposes, the averments establish that the plaintiff was engaged in attending a picnic in the public park so that the activity in general, as well as her use in particular, were for "recreational purposes."

535 A.2d at 309.

In the present case, the Drakes have conceded that the "Haunted Grain Elevator" activity may have been pleasurable and some recreational enjoyment may have been derived from participation in the activity. We hold, consistent with the *Kniaz* court, that Holli's participation in the "haunted house" activities were at least partly recreational in nature despite the fact that the activities were also partly for the purpose of fund-raising. Therefore, we hold that the use of the grain elevator was under the ambit of the IRUS.

■ The Drakes raise three new theories to withstand summary judgment for the first time on appeal. The Drakes argue that because the Bank knew that the property would be opened to the general public, the Bank could be held liable under "the public purpose exception" to "recreational user statutes" as recognized in *Chrysler Corp. v. M. Present Co. Inc.,* (7th Cir.1974), 491 F.2d 320. The Drakes also assert that the "indirect economic benefit" the Bank received from donating the use of the grain elevator in terms of "fostering good will within the community" disqualifies them from protection under the IRUS, citing *Cedeno v. Lockwood, Inc.* (1983), 250 Ga. 799, 301 S.E.2d 265. Finally, the Drakes assert that the IRUS was only intended to apply to rural, underdeveloped real estate and was not intended to protect the landowners of urban, developed real estate, citing *Schneider v. U.S.A., Acadia National Park,* (1st Cir.1985), 760 F.2d 366. However, the Drakes did not present these theories to the trial court and therefore are precluded from asserting them as grounds for reversal on appeal. *Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551, 553.

The Bank donated the use of the grain elevator for the purpose of permitting the Kiwanis and the School's student council to hold a fund-raising "Haunted Grain Elevator" event, a purpose which was at least partly recreational in nature. The Drakes did not pay any monetary consideration in order for Holli to enter the premises. Therefore, the Bank is entitled to protection under the IRUS and owed the Drakes no assurance that the grain elevator was safe for holding a "haunted house." Therefore, the summary judgment in favor of the Bank was appropriate and we find no error.

### CONCLUSION

We reverse the summary judgment in favor of the School and reverse and remand for trial. We affirm the summary judgment in favor of the Bank.

BAKER, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent to the reversal of summary judgment for the School. The School is immune from suit as a result of "making an inadequate or negligent inspection" of the off-premises site. *See* IND. CODE § 34–4–16.5–3(11). Any possible duty to disclose the results of the inspection or to follow-up to determine whether the potential for harm had been abated was inextricably tied to the "inspection." Thus, the Tort Claims Act provides immunity in that the School negligently failed to complete the inspection.