**BOARD OF TRUSTEES OF BALL STATE UNIVERSITY, Appellant– Defendant,**

v.

**Sarah A. STRAIN, Appellee–Plaintiff.**

No. 18A02–0106–CV–426.

Court of Appeals of Indiana.

July 15, 2002.

Josef Musser, Kyle C. Persinger, Spitzer, Herriman, Stephenson, Holderhead, Musser & Conner, LLP, Marion, Indiana, Attorneys for Appellant.

Forrest Bowman, Jr., Bowman Cosby & Bowman, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

The Board of Trustees of Ball State University ("Ball State") appeals from a judgment entered in favor of Sarah A. Strain awarding personal injury damages on her negligence claim. On appeal, Ball State presents the following issues for review:

I. Whether the trial court erred in denying its motions for summary judgment and judgment on the evidence based upon governmental inspection immunity.

II. Whether, if Ball State does not have complete immunity, Strain made a prima facie case of negligence against Ball State.

III. Whether the evidence compelled an inference of contributory negligence on the part of Strain so as to preclude her claim.

We affirm.

## FACTS AND PROCEDURAL HISTORY

A performance of the Ball State Dance Theatre ("Dance Theatre") had been scheduled to take place at the Angola High School Auditorium on January 26, 1996. Strain was a student at Ball State University studying dance and a member of the Dance Theatre. In making preparations for the performance, Sarah Mangelsdorf, director of dance for the Department of Theatre and Dance in the College of Fine Arts, spoke by phone with Gary Kearney, a teacher at Angola Middle School who arranged the performance, about the size

and condition of the stage floor. Kearney told her that it was a basic wooden stage, and Mangelsdorf informed him that it needed to be swept and preferably mopped prior to the performance. An on-site visit to the auditorium did not occur prior to the performance date.

Kearney's daughter, Audra, was also a member of the Dance Theatre and had attended Angola High School. Several weeks before the trip to Angola, Audra told Lou Ann Young, an assistant professor in the Fine Arts Department and director of the Dance Theatre, that it "would be wise" to take a portable Marley dance floor [1] because the wooden stage floor was "really slippery," rough in spots and "it wasn't completely smooth." *Transcript* at 329. She further advised that "the band drummers [go] out there and drum on the floor, so it kind of messed it up." *Id.* Audra did not believe that stage floor was suitable for dancing. *Id.* at 331, 351. She communicated that the floor was a little chopped up, there were indentations, and that it was not perfectly smooth because of the drummers and the traffic on the stage. *Id.* at 351. Audra also mentioned the condition of the stage floor to fellow students in the Dance Theatre. Audra reiterated her concerns about the stage floor the day before the trip to Angola and on the morning the students were leaving. Despite this, the Marley floor was not transported from Ball State to Angola because the instructors did not believe it would be needed.

On the date of the performance, the Dance Theatre was running late. When they arrived in Angola, the high school band was practicing on the stage floor, and the Dance Theatre did not have the appro-

priate amount of time to adequately prepare for the performance, which normally includes warming-up, applying make-up, checking costumes, and spacing the programs (i.e., walking on the stage and determining the placement and spacing of the dance movements). Strain, who was in charge of costumes that day, warmed up in the wings of the stage where the lights were low. Several dancers, including Strain, approached Young and told her they were uncomfortable dancing on-point in the ballet slippers because the floor was slippery and uneven. Young informed the dancers that they had to wear their point shoes. Because the class was for academic credit, Strain felt obliged to comply.

Strain performed in two morning performances on January 26. During her first performance she could tell that the stage was uneven, but did not notice that the floor might be cracked or that it would splinter. Several seconds into her second performance as she executed a sliding dance movement between her male partners, a fourteen inch splinter punctured the back of her right knee. One of her partners carried her off the stage where Mangelsdorf ripped open her tights to reveal a hole in the back of her leg with wood sticking out of the wound.

A surgeon at the hospital removed a piece of the wood from Strain's leg, but apparently did not remove the entire length of the splinter. Strain continued to suffer severe pain over the course of the next few weeks. After several physical therapy appointments, a CT scan showed large pieces of wood still imbedded in her leg. An orthopedic surgeon removed "several pieces of very large wooden frag-

---

**1.** The record before us discloses that a Marley dance floor is a portable, flexible, artificial flooring of vinyl texture that is laid out in strips spanning the length of the stage floor and taped at the seams to prevent slipping and other hazards and to provide a cushioned, consistent surface for dancing.

ments, wooden splinters, in the depth of the wound." *Id.* at 386.

Strain filed. a complaint against Ball State alleging that Ball State negligently and carelessly failed to inspect the floor at Angola High School and that Ball State failed to make a portable dance floor available for the performance. Ball State subsequently filed a motion for summary judgment. The trial court granted partial summary judgment in Ball State's favor, finding that governmental immunity precluded Strain's claim of negligent inspection against Ball State. However, the trial court denied summary judgment as to Strain's claim of negligence for failing to provide a portable dance floor. Following the close of Strain's case-in-chief, Ball State moved for and was denied judgment on the evidence, and the case proceeded to trial. A jury returned a verdict against Ball State on the negligence claim and awarded Strain $150,000 in damages. Ball State now appeals.

## DISCUSSION AND DECISION

### I. Summary Judgment/Judgment on the Evidence

Ball State argues that the trial court erroneously denied its summary judgment and judgment on the evidence motions with respect to the claim that Ball State negligently and carelessly failed to make a portable dance floor available for the Angola performance. It contends that these motions should have been granted in its favor because governmental inspection immunity should have precluded Strain's entire claim against it, not just the claim based upon the theory that Ball State failed to make a reasonable inspection of the stage floor.

Generally, an order denying summary judgment is not a final appealable judgment because it does not irretrievably dispose of one or more issues between the parties; neither does it determine nor foreclose the rights of the parties. *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App. 1996), *trans. denied.* "Rather, the denial of a motion for summary judgment merely places the parties' rights in abeyance pending ultimate determination by the trier of fact." *Id.* Therefore, a party seeking review of denial of a summary judgment motion must ordinarily do so by way of interlocutory appeal. *Id.* Yet, once final judgment is entered following trial, the ultimate determination of the trier of fact upon the merits of the claim has occurred, and the interlocutory nature of the denial of summary judgment terminates. *Id.* Accordingly, "a party who fails to bring an interlocutory appeal from the denial of a motion for summary judgment may nevertheless pursue appellate review after the entry of final judgment." *Id.*

On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. *State v. Snyder,* 732 N.E.2d 1240, 1243 (Ind.Ct.App.2000). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We therefore must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. A genuine issue of material fact exists where facts concerning an issue, which would dispose of the litigation are in dispute, or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Downs v. Panhandle Eastern Pipeline Co.,* 694 N.E.2d 1198, 1200 (Ind.Ct.App.1998), *trans. denied.* If the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Burkett v. American Family Ins.*

*Group,* 737 N.E.2d 447, 452 (Ind.Ct.App. 2000). " 'When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo.' " *Id.* (quoting *Mahowald v. State,* 719 N.E.2d 421, 424 (Ind.Ct.App.1999)).

■■■ In reviewing the propriety of a motion for judgment on the evidence, we must view the evidence in a light most favorable to the non-moving party. *Keith,* 661 N.E.2d at 35. Judgment can only be entered if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.* at 35–36.

Here, prior to trial, Ball State successfully moved for summary judgment on Strain's claim of negligent inspection of the Angola High School auditorium stage floor based upon governmental inspection immunity under IC 34–12–3–3(12)[2], which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from .... (11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety.

The trial court determined that Ball State was immune from liability for failing to make an adequate inspection. However, the trial court determined that based upon the designated evidence, a reasonable jury could find that the injury to Strain could have been prevented by use of the Marley floor. In denying the summary judgment motion, the court concluded that Ball State possessed knowledge, independent of an inspection, that the wooden stage floor posed a specific threat of injury and that it had a duty to exercise reasonable care and precaution to protect the student dancers from such danger.

In *Drake by Drake v. Mitchell Cmty. Schs.,* 628 N.E.2d 1231 (Ind.Ct.App.1994), *aff'd in part, vacated in part on other grounds,* 649 N.E.2d 1027 (Ind.1995), a student contracted histoplasmosis from pigeon droppings while preparing a grain elevator for an annual Halloween haunted house, which was co-sponsored by the Mitchell Community Schools. A student advisor, who was aware of the potentially unsafe condition of the grain elevator and the risk of exposure to histoplasmosis, requested that the elevator be cleaned prior to allowing students to decorate the elevator. In any event, Drake contracted the illness and subsequently brought suit against the school for her damages. Prior to trial, the trial court granted summary judgment in favor of the school based upon governmental immunity. On appeal, Drake conceded that the school was immune from liability based upon a duty to inspect the grain elevator. However, Drake argued that because the school had specific knowledge of the risk of histoplasmosis, independent of any inspection, it had a duty to warn or otherwise protect students from exposure.

■■ In our analysis, we initially noted that Indiana law imposes a "duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority." *Id.* at 1234 (citing *Norman v. Turkey Run Cmty. Sch. Corp.,* 274 Ind. 310, 315, 411 N.E.2d 614, 617 (1980)). School authorities must exercise a level of care for their students' safety that an ordinary prudent person would exercise under the same or similar circumstances. *Id.* Nevertheless, schools are not strictly liable to students who suffer injuries. *Id.*

---

**2.** *Now* IC 34–13–3–3(11); formerly IC 34–4– 16–53.

In examining the immunity provision relied upon by the school we determined that although the immunity did indeed apply to making an inadequate or negligent inspection of the grain elevator, this blanket immunity could not be "stretched far enough to cover the [s]chool for any breach of duty owed to the children independent of an inspection." *Id.* In reversing the summary judgment, we reasoned that the student advisor was aware that the elevator posed a risk of exposure to histoplasmosis and that she had time to communicate this threat to her students so they could have taken precautions or been forbidden to enter the grain elevator until it was cleaned. Given the particular facts of the *Drake* case, we concluded that the school's "knowledge of the specific danger in question, and accordingly, its duty to exercise reasonable care to protect its students from this danger, was independent of any duty it may have had to inspect the grain elevator." *Id.* at 1234–35.

■ Similarly, in the present case, the trial court determined that Ball State had a duty to protect its students based upon knowledge of the condition of the wooden floor. The trial court's order denying summary judgment on Ball State's duty to provide a portable dance floor is as follows:

11. Ball State argues that it had no specific, actual knowledge that the Angola High School stage floor posed a danger of *splinters* to dancers. The instructors' general awareness that dancers may have exposure to splinters from wood floors is not sufficient, as a matter of law, according to Ball State.

12. Plaintiff designates certain facts to the Court showing: Ball State's instructors knew that wooden floors presented a splinter hazard to dancers; they knew the Angola High School stage floor was a wooden floor before going to the performance; the instructors knew that a wooden floor presented a possibility of splinters; a Marley floor was available, which eliminated the danger posed by splinters; Ball State could have transported a Marley floor to Angola High School for the performance; an Angola High School graduate warned the Ball State instructors a few weeks before the performance to take the Marley floor to Angola High School because the stage floor there was slick, not smooth in spots, "choppy," and rough in spots; when they arrived at Angola High School, neither instructor inspected the floor, except to see if it was clean, and they told the students to inspect the floor; no one specifically inspected the floor for splinters, and the inspection was still going on when it was time for the performance to start.

13. Ball State cites the Court to the *Drake* decision, which held that although the school was immune from liability for making an inadequate or negligent inspection, the student's injuries resulted from the school's knowledge, independent from any inspection, that the grain elevator posed a specific danger of histoplasmosis. The Court finds that Ball State had sufficient, specific knowledge in this case to impose a duty to consider bringing and using the portable floor. As noted in paragraph 12, the instructors knew the Angola stage floor was wood, they were warned by a student to bring the portable floor because the wood was not in good condition in spots, and they knew that wooden floors posed a specific danger of splinters. The fact that they did not see splinters sticking out of the Angola High School floor should not insulate Ball State from liability.

*Appellant's Appendix* at 35–36.

The evidence presented at trial consisted of the same facts, namely, that Ball

State's representatives knew that the stage floor was wood and that a wooden stage posed a risk of splinter injury, that Audra Kearney warned the instructors about the condition of the floor, and that a Marley dance floor could have been transported to Angola High School for the safety of the dancers. Given the designated evidence presented by Strain in opposition to Ball State's summary judgment motion and the evidence she presented at trial, we cannot conclude that the trial court erred in denying both the summary judgment motion and the motion for judgment on the evidence. Contrary to Ball State's argument on appeal, the evidence presented permits a finding of negligence independent of an inspection, which was all that was required to withstand the motions. The trial court did not err by failing to make a summary disposition at either stage of the case and properly allowed the jury to resolve the negligence issue it was presented.

## II. Negligence

Ball State next argues that Strain failed to make a prima facie case of negligence against Ball State. It contends that "[n]o evidence was presented to the trial court or jury which established that Ball State's representatives were aware of an unreasonable risk—independent of an inspection—of the specific harm of a serious splinter injury to Strain." *Appellee's Brief* at 10. Ball State maintains that the testimony did not establish that Ball State was aware of the risk of the specific splintering hazard, which ultimately injured Strain. We disagree and find the evidence was sufficient to establish Ball State's negligence.

The evidence presented at trial is almost precisely the same as that relied upon by the trial court in ruling on Ball State's motion for summary judgment. Ball State knew that the wooden stage floor was dented, chopped up in spots, and uneven. The instructors also knew about the potential hazard of splinters when dancing on a wooden stage. They also knew that the portable Marley floor, which was standard in the industry, would protect from this type of hazard. Yet, the instructors failed to bring the floor to the Angola High School performance. Given the evidence presented by Strain at trial, the jury could reasonably have determined that Ball State had prior knowledge of an unreasonable risk of the potential for a splintering injury without the use of the Marley floor.

## III. Contributory Negligence

Ball State finally contends that Strain was contributorily negligent by her failure to exercise ordinary care and precaution for her own safety. The burden of proving contributory negligence as an affirmative defense rested upon Ball State. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1120 (Ind.Ct.App.1995), *trans. denied* (1996). Because the jury returned a verdict in favor of the plaintiff, this necessarily means that they found no contributory negligence. Accordingly, Ball State appeals from a negative judgment. We will not disturb the jury's verdict absent a showing by Ball State that the verdict and judgment are contrary to law. *Id.* A verdict is contrary to law when the evidence is without conflict and leads to a conclusion opposite of that reached by the jury. *Id.*

The evidence establishes that Strain had learned from Audra prior to the performance that the stage was unfit, but did not know the precise reason for Kearney's concerns. Strain had never heard about or seen injuries caused by splinters from dancing on a wooden stage. The evidence further establishes that she used reasonable care in warming up in the wings of the stage prior to the performance. During the warm-up period, she

complained to Young about dancing in her ballet point shoes because she was concerned with slipping on the floor. Given the time constraints and the fact that Strain was in charge of unloading and distributing the costumes, she did not have time to go onto the stage prior to her performance. As Strain performed her first dance, she testified she concentrated on performing and not on the condition of the stage floor. Finally, although she danced without the benefit of a Marley floor, she did not feel as if she had a choice given the academic credit that she was receiving.

Given this evidence, we find that Strain acted reasonably to protect herself and cannot say that she failed to exercise that degree of care that an ordinary, reasonable person would exercise in similar circumstances. Because we do not find the verdict and judgment contrary to law, we will not disturb the jury's verdict. *See Snyder*, 732 N.E.2d at 1243 (the issue of contributory negligence is typically a question of fact for the jury unless the facts are in dispute and only a single inference can be drawn therefrom).

Affirmed.

MATHIAS, J., and BARNES, J., concur.