Mary ROE, Jane Doe, Appellants–
Plaintiffs,

v.

NORTH ADAMS COMMUNITY SCHOOL CORPORATION, American Red Cross, Adams County Chapter, and Thomas W. Sheets, Appellees–Defendants.

No. 90A02–9403–CV–133.

Court of Appeals of Indiana,
Second District.

March 13, 1995.

Rehearing Denied May 17, 1995.

Michael T. Yates, Jerrald A. Crowell, John C. Bohdan, Moss, Crowell, Harris, Yates & Long, Fort Wayne, for appellants.

John B. Drummy, Eric D. Johnson, Thomas E. Wheeler, II, Kightlinger & Gray, Indianapolis, for appellee, North Adams Community School Corp.

H. John Okeson, Baker & Daniels, Fort Wayne, James H. Ham, III, Baker & Daniels, Indianapolis, for appellee American Red Cross, Adams County Chapter.

Thomas Wade Sheets, Decatur, for appellee, Thomas Wade Sheets.

## OPINION

FRIEDLANDER, Judge.

Mary Roe and Jane Doe (plaintiffs) appeal the trial court's grant of summary judgment entered in favor of The American Red Cross (Red Cross), Thomas W. Sheets, and the North Adams Community School Corporation (the school) [hereinafter collectively referred to as the defendants], which determined that the defendants were not liable for alleged injuries the plaintiffs received when an individual videotaped them as they undressed in a school locker room.

We affirm.

The facts most favorable to the plaintiffs, the nonmoving parties, are that in May, 1989, the Red Cross offered a lifeguarding class designed and taught by Sheets, a Red Cross volunteer. Both plaintiffs enrolled in the program. Doe was a sixteen year-old sophomore student at Bellmont High School (Bellmont), and Roe was a fifteen year-old freshman at South Adams High School.

The class was offered between May 8 and May 20, 1989, at Bellmont between the hours of 6:00 p.m. and 9:00 p.m. on weekdays and 9:00 a.m. to 6:00 p.m. on weekends. The Red Cross made arrangements with the school for the use of the Bellmont pool for this class. The pool was made available to the Red Cross at no charge. The lifeguarding class was organized, operated, and sponsored by the Red Cross, and no school employees were involved in teaching or supervising the class. The students did not earn credit for taking the class.

During the school day and prior to the lifeguarding class, the locker rooms and the pool area were locked, and the only non-school personnel who had a key were the Parks and Recreation Department, who staffed the pool when it was being used for community purposes. The school did not permit Sheets to have a locker room key because it was "trying to be very careful with distribution of keys." *Record* at 442, 474. The Red Cross made arrangements with the school to have a custodian unlock the pool facilities just before the class began. After the classes, Sheets would inspect the pool and locker rooms and a custodian would lock the pool area.

Twenty-three individuals enrolled in the lifeguard program, and they typically met in a classroom for lecture and instruction at the beginning of class. The students would then proceed to the locker areas and change clothes.

Approximately one month before the classes were to begin, N.T., T.J., and several other Bellmont students concocted the idea to videotape the girls as they undressed in the locker room. During at least three of the lifeguarding classes, N.T. placed his grandparents' camcorder in one of the women's lockers and videotaped them while they changed clothes. T.J. served as a lookout while N.T. adjusted the camera. In order to disguise the camera and prevent its discovery, N.T. wrapped the camcorder in a towel and padlocked the locker shut. While Sheets conducted nightly inspections of the locker rooms, he never saw the camcorder.

In December 1989, several students informed Bellmont's principal that a videotape existed depicting certain female students in various stages of undress. The principal began an investigation and T.J. eventually delivered a copy of the tape to John Smitley, the school custodian. Smitley gave the tape to the principal, and he learned that N.T. was responsible for the filming because N.T.'s face appeared at the beginning of the tape. The tape also depicted N.T. adjusting the camcorder. When the principal confronted N.T., he explained that all copies of the tape had been destroyed. N.T. was eventually expelled from the school and the principal gave the tape to the local police.

On May 2, 1991, both plaintiffs filed four-count complaints against the defendants seeking damages for injuries as a result of the videotaping episodes. Counts I and II related to the school, while counts III and IV related to Sheets and the Red Cross. The defendants filed motions for summary judgment and following a hearing on October 12, 1993, the trial court granted the motions and entered the following order:

"Motion Of The Defendant American Red Cross, Adams County Chapter For Judgment On The Pleadings filed March 8, 1993, Defendant's Motion For Summary Judgment filed July 23, 1993, Defendant's Motion For Summary Judgment filed July 30, 1993, and Motion Of The Defendant, Thomas W. Sheets, For Judgment On The Pleadings filed July 30, 1993, came on for hearing on October 12, 1993 and the Court being duly advised in the premises now converts both Motions For Judgment On The Pleadings into Motions For Summary Judgment because they were supported by matters outside the pleadings.

The Court now finds that there are no genuine issues of material fact and that all three Defendants are entitled to summary judgment as a matter of law.

In support of said finding the Court further finds that none of the Defendants were under a duty to protect the Plaintiff as a participant in the lifesaving course from the act about which she complains. The court further finds that the Plaintiff cannot recover damages for emotional distress because there were no intentional torts committed by any of the Defendants herein and there was no physical impact on the Plaintiff.

Therefore, the court now grants judgment in favor of all three Defendants and against the Plaintiff herein."

*Record* at 700.

The plaintiffs appeal and present the following issues:

1. Did the trial court err in granting summary judgment in favor of the defendants when it concluded that they did not owe the plaintiffs a duty to protect them from being videotaped?

2. Did the trial court properly conclude that the plaintiffs could not recover damages for emotional distress due to the absence of any physical impact?

1.

Upon appellate review of summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Once the movant establishes that no genuine issue of fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. If the nonmoving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, *trans. denied.* Further, the party moving for summary judgment must designate to the trial court all parts of the matters included in the record that it relies on for the motion. The opposing party likewise must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind. Rules of Procedure, Trial Rule 56(C). Any doubt as to the existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Cowe by Cowe v. Forum Group,*

*Inc.* (1991), Ind., 575 N.E.2d 630; *Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484.

The plaintiffs argue that the trial court erroneously determined that the defendants owed no duty to protect them from being videotaped in the locker room during the Red Cross classes.

 In determining whether a duty exists, three factors must be balanced: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. Ordinarily, whether a duty exists is a question of law. *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802. The duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties, and it is the province of the court to determine whether such relations give rise to a duty. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364; *Webb, supra.* The plaintiffs assert that the defendants "assumed a duty of security concerning the locker room facilities at the School" and that "the School undertook to maintain control of all aspects of security surrounding the class." Appellant's Brief at 17–19. In support of their argument, they point to the following allegations:

"(1) The Red Cross lifesaving classes were held at the Bellmont High School and arrangements to use the pool were made by contacting an individual at the School. The School knew when Sheets was to be using the pool and it was to have someone there to unlock the doors for Sheets.

(2) The School was aware of the issue of security and counselled with coaches and people, who were in charge of extra-curricular activities, to be cognizant of security.

(3) School custodians were on duty twenty-four hours a day at the School ... and one custodian on each shift would have keys to all areas of the School.

(4) The locker rooms featured the type of locks that required a key to lock the door.

(5) The School's principal testified that students at Bellmont High School were not permitted to have possession of School keys.

(6) The School had policies in place for when the locker room doors were to be kept locked. When the pool was not in use, it was to be locked; if somebody was using the pool then the School's policy was that it may be unlocked during that period of time.

(7) School maintenance personnel were to check the locks periodically to make sure that they were functioning and had the responsibility to inspect the girl's locker room for any needed repairs."

Appellant's brief at 18–19.

 Contrary to the plaintiffs' arguments, there is no support for a finding that the school assumed a duty to provide security for the Red Cross classes. The evidence only demonstrates that the school agreed to provide the facilities to the Red Cross for the classes, and the custodians were on duty to primarily provide cleaning and maintenance services. It does not follow that having school maintenance workers periodically inspect the lockers for repairs suggests an undertaking on the school's part to control security.

The plaintiffs also fail to explain how the type of locker room locks the school used supports a conclusion that it undertook to afford security to the Red Cross class. No evidence was presented explaining that the particular lock the school used was for the purpose of maintaining all aspects of security surrounding the Red Cross class. Even though the school principal testified that the students were not entitled to building keys, and the locker room doors remained locked when the pool was not in use, the plaintiffs made no showing that this policy was adopted to protect the Red Cross. The record reflects that the school counseled coaches and other school personnel who were involved in extracurricular activities only *after* the videotaping incident occurred.

In light of the foregoing, it is clear that the "factors" cited by the plaintiffs fail to support

their argument that the school undertook to control security surrounding the Red Cross class.

■ In order for the plaintiffs to recover, they were also bound to show that N.T.'s conduct was foreseeable by the school. In analyzing the foreseeability component of duty, we focus on whether the individual actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Webb, supra.* As this court observed in *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574, "[t]he duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." Imposition of a duty is limited to instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Webb, supra.* In discussing foreseeability, this court has observed:

> "[T]he Fawleys erroneously contend that foreseeability is not an element of duty under Indiana law. In the seminal case of *Palsgraf v. Long Island R. Co.* (1928), 248 N.Y. 339, 344, 162 N.E. 99, 100, Justice Cardozo wrote '[t]he risk reasonably to be perceived defines the duty to be obeyed'. Despite the Fawleys' contentions to the contrary, our supreme court in *Webb [v. Jarvis,* (1991), Ind.] 575 N.E.2d 992, 996–997, *reaffirmed that foreseeability was indeed a component of duty, under Indiana law.* The *Webb* court stated that three factors must be considered in order for a court to impose a duty. *Id.* at 995. These factors which are to be balanced include, '(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.' "

*Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 13 (emphasis supplied).

In the case before us, the plaintiffs have not demonstrated that there was any duty on the part of the school to foresee an act such as N.T.'s. In examining the evidence in a light most favorable to the plaintiffs, there is simply no showing, as a matter of law, that N.T.'s conduct was foreseeable or that the school's alleged negligence proximately caused the plaintiffs injuries.

■ The plaintiffs next assert that "[t]he record confirms the existence of a relationship between Plaintiffs, Sheets and the Red Cross sufficient to lead to a duty of reasonable care." *See* Appellant's Brief at 17. Our supreme court has determined that a duty to warn and protect against a particular danger does not exist unless the party allegedly subject to the duty has knowledge of the danger. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 411 N.E.2d 614. In *Norman,* a school corporation was absolved from liability for injuries sustained by a second grade student who collided with a first grade student as they both ran across a school playground during a supervised recess. There was no "indication that there was any ... dangerous condition [or] dangerous instrumentality" present at the playground. *Id.* 411 N.E.2d at 618. The court concluded that running across a playground did not present a dangerous or unusual condition, and that, as a matter of law, no "duty arose on any of the teachers or all of them to pay particular attention to a particular student who was running." *Id;* see also *Broadhurst v. Davis* (1970), 146 Ind. App. 329, 255 N.E.2d 544 (a party has no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated).

As in *Norman,* there was nothing visible to Sheets or the Red Cross suggesting the presence of a potentially dangerous condition. The video camera was obviously concealed and, as a matter of law, neither the Red Cross nor Sheets had any duty to protect the plaintiffs from the incident because they had no knowledge of the risk.

The plaintiffs also rely on *Ember v. BFD, Inc.* (1986), Ind.App., 490 N.E.2d 764, for the proposition that the duty of the Red Cross to protect the plaintiffs is based upon some "special relationship." In *Ember,* the plaintiff alleged that a bar and its owners negligently breached their duty to protect him from being attacked and beaten on the street and parking lot adjacent to the pub. This court determined that "the imposition of a

legal duty to aid or protect another person is dependent upon the existence of a special relationship," and that some "[f]amiliar relationships imposing a reasonable duty of care include those of landowners to invitees, common carriers to passengers, and innkeepers to guests." *Id.* at 768–69. We also observed that there was a question of fact as to whether the pub gratuitously assumed, by its affirmative conduct, a duty to protect the plaintiff on public streets and parking lots. The pub had distributed a flyer with its phone number encouraging people to call in the event of neighborhood problems. It also assured residents that it would patrol the parking lots in the area, and it employed a security officer who assisted with problems off of the premises.

Unlike *Ember,* the plaintiffs have failed to allege any facts supporting a type of relationship giving rise to a duty to protect them from the videotaping incident. The only relationship the Red Cross had to the plaintiffs and the video camera incident was that it sponsored a lifesaving class conducted on school premises in which the plaintiffs participated. The record also fails to show that Sheets assumed a duty that would guarantee security sufficient to prevent a third party from concealing a video camera in the women's locker room. Neither Sheets nor the Red Cross had any control over the security on the school premises, and the Red Cross did not have access to any keys that would have permitted it to control access to the pool and the locker room facilities. Sheets did not have any control over the building at any time outside of the class. The record is devoid of any evidence establishing a "special relationship" between the Red Cross, Sheets, and the plaintiffs that imposed a duty to control access to the premises in order to prevent a hidden camera from being installed in the locker area.

The trial court therefore properly determined that neither Sheets nor The Red Cross had a duty to protect the plaintiffs from any harm caused by the videotaping incident.

2.

The trial court properly entered summary judgment for the defendants when it determined that the plaintiffs were precluded from recovering damages because there was no physical impact.

In the complaint, the plaintiffs sought damages for the negligent infliction of emotional distress and alleged as follows:

"As a direct result of [the defendants'] aforesaid acts and omissions Plaintiff was made to suffer ridicule, embarrassment, vexation, humiliation, mental distress, loss of sleep and injury to her right of privacy. Furthermore, Plaintiff has suffered interference with her right to personal health and well being and to be free from emotional distress and mental anguish."

*Record* at 8–10, 12.

To recover under a claim for tortious infliction of emotional distress, a plaintiff is generally bound to show that (1) a physical impact occurred, (2) physical injury arose from the impact, and (3) emotional damage was suffered as a result of the impact and injury. *Boston v. Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 61 N.E.2d 326. Our supreme court has recognized two exceptions to this rule. First, in *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27, the impact requirement was removed in instances where an intentional trespass has occurred. This exception does not apply here, however, because the plaintiffs' claims sound solely in negligence.

The second exception was created in *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, wherein our supreme court modified the impact rule as it applied to negligent infliction of emotional harm. In *Shuamber,* a mother and daughter sought recovery for emotional damages they suffered when their son/brother was killed. The death occurred when the car in which the three of them were traveling was struck by a drunk driver. Under Indiana's three-part analysis, the mother and daughter could not recover for their emotional injuries because the emotional trauma was not triggered by their own injuries, but rather the injuries of their son/brother.

Recovery was permitted, and the *Shuamber* court modified the rule as follows:

"[When a plaintiff] sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff."

*Id.* at 456; *J.L. & R.L. v. Mortell* (1994), Ind.App., 633 N.E.2d 300.

The plaintiffs allege no impact by anyone at any time, and they allege no intentional wrongful conduct on the part of the school, Sheets or the Red Cross. In accordance with *Shuamber*, the trial court properly determined that the plaintiffs could not maintain an action for emotional distress. *See also Comfax v. North American Van Lines, Inc.* (1992), Ind.App., 587 N.E.2d 118 (accompanying physical impact must occur prior to or simultaneously with the infliction of emotional distress).

For the foregoing reasons, the trial court properly ruled that the defendants were entitled to summary judgment.

Judgment affirmed.

SULLIVAN and NAJAM, JJ., concur.