**Joe McCLYDE and Penny McClyde, Individually and as Next Friends of Oscar McClyde, a minor, Appellants,**

v.

**ARCHDIOCESE OF INDIANAPOLIS and St. Andrew School, Appellees.**

No. 49A02–0008–CV–549.

Court of Appeals of Indiana.

July 30, 2001.

---

William C. Potter, II, Audrey M. Bougard, Price, Potter, Jackson & Mellowitz, P.C., Indianapolis, IN, Attorneys for Appellants.

John S. (Jay) Mercer, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Joe and Penny McClyde, parents of Oscar McClyde (collectively, the "McClydes"), appeal the trial court's grant of summary judgment in favor of the Archdiocese of Indianapolis and St. Andrew's School (collectively, the "School System"). They raise two issues on appeal, which we combine and restate as: Whether the trial

court erred by granting summary judgment in favor of the defendants.

We reverse and remand for further proceedings.[1]

### Facts and Procedural History

The facts most favorable to the non-movant reveal that, while school was in session on December 14, 1995, minor child, Oscar McClyde, was assaulted in his classroom at St. Andrew's by classmate, J.C. The incident occurred as the seventh-grade class was returning from lunch. Oscar and J.C. were among the first students to enter the classroom. At this time, Oscar made a comment regarding J.C.'s mother and J.C. attacked Oscar. The class teacher, Kelly Korniak, was following the class back to the room. When she arrived in the room, she saw J.C. attacking Oscar but was physically unable to stop the attack. As a result, she sought help outside the classroom. By the time the altercation was ended, Oscar had received a broken nose and other facial injuries requiring medical attention.

The McClydes filed their complaint for damages against the School System on May 23, 1997. On September 1, 1999, the School System moved for summary judgment on the McClydes' complaint. As part of their opposition to summary judgment, the McClydes filed affidavits from Penny and Joe McClyde. The School System filed a motion to strike the affidavits along with a supplemental designation of matters pursuant to Indiana Trial Rule 56. The McClydes responded with a motion to strike the supplemental designation.

On March 9, 2000, the trial court heard evidence on the motion for summary judgment as well as the parties' other pending motions. The following day, the trial court granted the McClydes' motion to strike the

1. The Appellee's motion for oral argument is denied.

supplemental designation and denied the School System's motion to strike the affidavits. On July 14, 2000, the trial court issued its order granting the School System's motion for summary judgment. The order stated:

> The Defendants having moved for summary judgment on September 1, 1999, and a hearing having been held on the motion, after which the Court took the matter under advisement, and now having reviewed the pleadings and the supporting materials, the Court now GRANTS the combined motions for summary judgment filed by the Defendants, Archdiocese of Indianapolis and St. Andrew School. The Court finds that there is no genuine issue of material fact, and that the Defendants are entitled to a judgment as a matter of law. Therefore, the Court enters judgment for the Defendants and against the Plaintiffs.

R. at 346.

The McClydes appeal.

### Discussion and Decision

In reviewing a grant of summary judgment by the trial court, we stand in the shoes of the trial court, utilizing the same standards and resolving any questions of fact or inferences drawn therefrom in favor of the non-moving party. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind. Ct.App.1996). Summary judgment should be granted when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The trial court's grant of summary judgment will be affirmed if it is sustainable on any theory found in the evidence designated to the trial court. *Bamberger*, 665 N.E.2d at 936.

The tort of negligence is comprised of the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by that breach. *Ashcraft v. Northeast Sullivan County School Corp.*, 706 N.E.2d 1101, 1103 (Ind. Ct.App.1999). In order to prevail on a motion for summary judgment in a negligence action, the defendant must demonstrate that the undisputed material facts negate at least one of the elements essential to plaintiff's claim or that the claim is barred by an affirmative defense. *Id.*

Indiana recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of their students. *Miller v. Griesel*, 261 Ind. 604, 612, 308 N.E.2d 701, 706 (1974). While the parties do not dispute that schools owe this general duty to protect their students, the School System argues that a school's general duty to protect its students does not extend to protecting them from the unforeseeable criminal acts of other students. The School System emphasizes the limitation in the *Miller* holding that "schools are not intended to be *insurers* of the safety of their pupils, nor are they strictly liable for *any* injuries that may occur to them." *Id.* (emphasis added). Consequently, because it is well-settled in this state that a school owes a duty of care to its students, we must determine whether the School System conformed to the standard of conduct required by its duty with respect to Oscar. *See Ashcraft*, 706 N.E.2d at 1104.

In cases involving an alleged breach of a school's duty owed to its students, Indiana courts have imposed a standard of care that is the level of care an ordinary, prudent person would exercise under the same or similar circumstances. *Id.* Because there is "some remote risk of

injury in all human existence," *Norman v. Turkey Run Cmty. School Corp.*, 274 Ind. 310, 316, 411 N.E.2d 614, 617 (1980)(quoting *Driscol v. Delphi Cmty. School Corp.*, 155 Ind.App. 56, 64, 290 N.E.2d 769, 774 (1972)), the duty imposed upon Indiana schools to protect their students has been necessarily defined by the specific circumstances of each case. This court has held that "summary judgment is especially inappropriate where the critical question for resolution is whether the defendant exercised the requisite degree of care under the factual circumstances." *Ashcraft*, 706 N.E.2d at 1104. Nevertheless, as stated above, when the undisputed material facts negate this element of the plaintiff's claim, a trial court's grant of summary judgment in defendant's favor is proper. *Id.*

Our state supreme court has determined the degree of care required by the factual circumstances in cases such as *Miller*, 261 Ind. at 613, 308 N.E.2d at 707, which involved a fifth-grade student who was injured in an explosion caused by a detonator cap brought to school by a classmate. The *Miller* court reasoned:

> Of course what constitutes due care and adequate supervision depends largely upon the circumstances surrounding the incident such as the number and age of the students left in the classroom, the activity in which they were engaged, the duration of the period in which they were left without supervision, the case of providing some alternative means of supervision and the extent to which the school board has provided and implemented guidelines and resources to insure adequate supervision.

*Id.* In *Miller*, the court held that the trial court's grant of judgment on the evidence at the end of plaintiff's case was proper due to the plaintiff's failure to present a prima facie showing of the school's breach of duty. *Id.*

In *Norman*, our supreme court considered whether a school breached its duty of care by providing insufficient supervision during recess, when two students who were running on the playground collided with one another. Both students were injured. The court held that "[s]ince running on the playground did not present a dangerous or unusual condition, under no set of facts presented to the jury could it be said that a duty arose on any of the teachers or all of them to pay particular attention to a particular student who was running." *Norman*, 274 Ind. at 317, 411 N.E.2d at 618.

In *Ashcraft*, this court considered whether the school breached its duty of care when a cheerleader was injured by an unmanned automobile that rolled into her during a fundraising event held in a parking lot. We found that the facts presented by Ashcraft simply did not demonstrate that the cheerleading coach breached her duty by not paying constant and perfect attention to Ashcraft during the fundraiser. This court further held that "no interpretation of the facts gives rise to the inference that had [the coach] supervised the fundraiser differently, [the] car would not have rolled down the incline and struck Ashcraft." *Ashcraft*, 706 N.E.2d at 1105.

Here, to show that the School System had a duty of care toward Oscar and breached that duty, the McClydes first had to establish that: (1) J.C. had a propensity towards violence; (2) the school system or class teacher was aware of this propensity; (3) the teacher failed to adequately supervise the class; and (4) her failure to adequately supervise allowed J.C. the opportunity to attack Oscar, proximately causing his injuries. In support of their contention that the School System breached its duty to provide a safe environment for Oscar, the McClydes rely almost exclusively on an affidavit of Penny McClyde.

Indiana Trial Rule 56(E) requires that affidavits submitted in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such fact as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters state therein." In order to satisfy the requirements of Trial Rule 56(E), affidavits should follow substantially the same form as if the affiant were giving testimony in court. *Miller v. NBD Bank, N.A.*, 701 N.E.2d 282, 286 (Ind.Ct.App.1998). Conclusions or opinions offered in affidavit form by one not qualified to testify to such will not suffice. *Id.*

The relevant portions of Penny McClyde's affidavit state:

2. I have personal knowledge of the matters set forth in this Affidavit. I am over the age of twenty-one (21) years.

* * *

4. At all times relevant to this case, including December 14, 1995, I was an employee of St. Andrew School. In that capacity I became aware that the School had low enrollment. To correct this problem the School began accepting any student who sought admission without conducting any check of the student's background for violent behavior.

* * *

6. The children were under no supervision at the time J.C. attacked Oscar McClyde.

7. Kelly Korniak, my son's teacher, could have prevented the attack against Oscar McClyde if she had been properly supervising J.C. Earlier in the day, she informed me she had witnessed J.C. "jawing" or verbally challenging my son. Instead of placing herself in a position to observe J.C. inside the classroom, while the class was returning to its room, Kelly Korniak was at the end of the student line. This provided J.C. the opportunity to attack my son.

* * *

11. In my employment capacity at St. Andrew, after the attack I learned that prior to, and at the time of the attack on Oscar McClyde, J.C. was known by St. Andrew School officials and employees to have a history of behavioral and emotional problems. Furthermore, I learned that prior to the attack St. Andrew Officials recommended that J.C. attend anger management classes for his behavioral problems; however, J.C. did not attend these classes and St. Andrew Officials were aware he did not attend.

R. at 135–37. The McClydes argue that the statements made in Penny's affidavit are admissible evidence because they qualify as hearsay exceptions under Indiana Evidence Rule 801(d)(2), which provides that statements made by a party or a representative of the party offered in opposition to the party are not hearsay. They contend that Penny's affidavit contains information about J.C. related to her by employees of the school.

The School System filed a motion to strike Penny's affidavit, alleging that the McClydes were attempting "to establish material issues of fact through the use of inadmissible opinion testimony, hearsay testimony and testimony lacking a proper foundation for personal knowledge." R. at 172. The transcript of the hearing on the motion for summary judgment demonstrates that the trial court was understandably skeptical about the admissibility of portions of Penny's affidavit. With regard to whether the statements in the affidavit were of Penny McClyde's personal knowledge, the following exchange was had:

THE COURT: Well, it doesn't say that. It doesn't say she was told by—she said, "I learned." That could have been from the paperboy or the guy sweeping out on 38th Street fixing the curbs.

[MCCLYDE COUNSEL]: I see your interpretation of it, Your Honor, but ...

THE COURT: That's what it says. I'm not interpreting it. That's what it says: "I learned that ..." It doesn't say how, who, where—did she read it? Did she hear it? Did she see it?

R. at 364. Nevertheless, the trial court denied the School System's motion to strike the affidavits.

The trial court has broad discretion in ruling on the admissibility of evidence. *Drake v. State,* 655 N.E.2d 574, 575 (Ind.Ct.App.1995). The issue of whether the statements in Penny McClyde's affidavit qualify as hearsay exceptions was before the trial court during the hearing on the motion for summary judgment. Despite extensive questioning and apparent skepticism with regard to certain statements in the affidavit, the trial court chose not to exercise its discretion to strike all or portions of any of those statements.

The trial court was, and we also are, limited to review of the School System's motion for summary judgment based solely on the School System's designated evidence, which conflicts with the McClydes' affidavits. In this procedural posture, we find that the completely unstricken Penny McClyde affidavit creates genuine issues of material fact.[2] Accordingly, we reverse the trial court's grant of summary judg-

ment in favor of the School System and remand for further proceedings.

Reversed and remanded.

BAILEY, J., and BAKER, J., concur.

---

2. As former trial judges all, we note that the trial court chose not to embark upon the laborious process of considering Penny McClyde's affidavit word by word in order to strike inadmissible evidence therein, despite a pending motion to do so. While it is an understandable decision, the completely unstricken affidavit leaves us with little alternative but to reverse.