LAPORTE COMMUNITY SCHOOL
CORPORATION, Appellant,

v.

Maria ROSALES, Individually and as the Parent and Natural Guardian of Juan Loera, a Minor Child Deceased, Appellee.

No. 46A04–1001–CT–4.

Court of Appeals of Indiana.

Oct. 27, 2010.

Rehearing Denied Jan. 12, 2011.

William H. Kelley, Darla S. Brown, Kelley Belcher & Brown, Bloomington, IN, Attorneys for Appellant.

Kenneth J. Allen, Robert D. Brown, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The LaPorte Community School Corporation appeals a judgment in favor of Maria Rosales ("Rosales"), individually and as the parent and natural guardian of Juan Loera. We affirm in part, reverse in part, and remand.

### Issues

The School raises four issues, which we restate as follows:

I. whether the trial court properly admitted an expert witness's testimony;

II. whether the trial court properly denied the School's motion for judgment on the evidence on the issue of negligence;

III. whether the trial court properly granted Rosales's motion for judgment on the evidence on the issue of contributory negligence; and

IV. whether the trial court properly instructed the jury regarding negligence.

### Facts

Hailmann Elementary School ("Hailmann") is part of the LaPorte Community School Corporation ("School"). Indiana State Board of Education regulations required the School to prepare an emergency preparedness plan and crisis intervention plan. See 511 I.A.C. 4–1.5–7, 511 I.A.C. 6.1–2–2.5. Hailmann's Safe Schools Plan Emergency Crisis Intervention ("Plan") required the school nurse to develop and coordinate a first aid team, coordinate an annual CPR and first aid training session, and provide a list of CPR trained individuals to the principal, Barbara Maitland. In 2006, Hailmann shared a school nurse, Karen Huskey, with another elementary school. Prior to September 2006, Huskey had never seen the School's Plan and Maitland had never talked to her about the Plan or CPR training. Prior to September 2006, Huskey had not coordi-

nated a first aid team, coordinated annual CPR training at Hailmann, or prepared a list of CPR trained individuals at Hailmann. Huskey was assigned to the other elementary school on the day of these events.

On September 12, 2006, Juan Loera was nine years old and in third grade at Hailmann. Thomas Muller, head custodian at Hailmann, was in the cafeteria during Juan's lunch period. Muller told Juan and other boys at his table to calm down and eat because they were joking around and laughing. A minute later, another student informed Muller that Juan was choking. Muller sent the noon assistant, Rhonda Smith, to get help and went to Juan's table. Juan had his hand by his throat and told Muller, "I'm choking." Tr. p. 378. Muller leaned Juan over the table and gave him three or four "back blows," and Juan vomited on the table. *Id.*

Maitland and Sandra McEathron, the school secretary, arrived in the cafeteria. McEathron saw that Juan was standing with his hand in his mouth. McEathron attempted to do the Heimlich maneuver but was unsuccessful in removing the obstruction. Maitland sent McEathron to make an "All–Call" announcement for anyone who knew the Heimlich maneuver to report to the cafeteria. *Id.* at 403.

Muller returned to Juan when he heard the "All–Call" announcement. *Id.* at 381. Muller saw that they were struggling to do the Heimlich maneuver on Juan, and Muller then attempted the Heimlich maneuver on Juan. Several other staff members and teachers also responded to the "All–Call" and attempted to do the Heimlich maneuver on Juan. At some point, Juan lost consciousness, and they put Juan on the ground and attempted to do stomach thrusts on him. They also did finger

sweeps of Juan's mouth and throat. Another teacher picked Juan up off the floor and did the Heimlich maneuver on him until a police officer arrived. The police officer unsuccessfully attempted stomach thrusts and did chest compressions on Juan until the ambulance arrived. Paramedic Jeff Koon found that Juan did not have a pulse or respiration. Koon opened Juan's airway with a laryngoscope blade and removed a large piece of corn dog with forceps. According to Koon, the corn dog was not lodged in Juan's trachea; it was in Juan's "oral cavity," which includes the throat. *Id.* at 499. Despite the school and emergency workers' efforts, Juan died later at the hospital.

On October 23, 2006, Rosales filed a tort claim notice with the School. On January 26, 2007, Rosales filed a complaint for wrongful death against the School, and in January 2008, Rosales filed an amended complaint for wrongful death against the School alleging negligence and emotional distress by Rosales.[1] In response, the School alleged in part that Rosales's damages were a proximate result of Juan's contributory negligence.

The School filed a motion for summary judgment, and in response to the motion for summary judgment, Rosales submitted an affidavit of Charles Hibbert. The School filed a motion to strike Hibbert's summary judgment affidavit and sought to exclude his trial testimony because, according to the School, his testimony was "unreliable and not based on anything other than his opinion." App. p. 124. The trial court found that Hibbert was an expert regarding school safety and school emergency plans, that any lack of reliability of his conclusions could be explored during cross examination at trial, and that

---

1. Rosales also included Alfred Loera, Juan's father, as a defendant in the action. The trial court later granted a default judgment against Alfred.

the danger of unfair prejudice compared to the probative value of the testimony was small. Consequently, the trial court denied the School's motion to strike the affidavit from the summary judgment proceedings and to exclude Hibbert's trial testimony. The trial court also denied the School's motion for summary judgment on Rosales's negligence claim but granted summary judgment to the School on Rosales's emotional distress claim.

A jury trial was held in September 2009. During the trial, Hibbert was unavailable to testify, and the School objected to the admission of his deposition. The trial court overruled the School's objection and allowed Hibbert's deposition to be read to the jury. At the close of Rosales's case, the School moved for judgment on the evidence on the issue of negligence, and the trial court denied the motion. At the close of the evidence, Rosales moved for judgment on the evidence regarding the School's contributory negligence defense, and the trial court granted Rosales's motion. Over the School's objections, the trial court gave Instruction Number 22 and Instruction Number 26 regarding negligence. The jury returned a verdict in favor of Rosales and against the School in the amount of $5,000,000. Pursuant to the Indiana Tort Claims Act, Indiana Code Section 34–13–3–4, the verdict was reduced to $500,000, and judgment was entered in that amount. The School filed a motion to correct error, which was deemed denied. The School now appeals.

## Analysis

### I. Hibbert's Testimony

The first issue is whether the trial court properly admitted Hibbert's deposition at the trial. The determination of the admissibility of expert testimony is a matter within the sound discretion of the trial court. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 470 (Ind.Ct.App.1998), *trans.* *denied.* We will reverse only for an abuse of that discretion. *Id.*

Hibbert is the president of Hibbert Safety School Consulting, LLC. He testified that he has extensive experience in "evaluating, reviewing and assessing school safety plans or guidelines." Tr. p. 275. He served as an external consultant to the Indiana Department of Education to evaluate school safety plans after the State Board of Education implemented the standard for schools in Indiana. He retired from the Metropolitan School District of Wayne Township in Indianapolis after working as the coordinator of safety and transportation services for twenty-one years.

Hibbert testified in the deposition that the School "failed to meet the standard of care required of schools in Indiana to have in place a plan to deal with foreseeable emergencies, such as a child choking." *Id.* at 279. According to Hibbert's deposition testimony, although the School's Plan was reasonable, the School failed to properly implement the Plan, "which was a breach of the standard of care required of them and by them." *Id.* Hibbert testified that, while no Indiana statutes require schools to have a certain percentage of staff to have training in CPR or first aid, in his opinion:

the reasonable standard of care is that people who are involved in the supervision and have responsibility in a daily basis for children, will have reasonable levels of training in regards to those things that can and will occur. Particularly, a choking child. A choking child is a very common experience and particularly in elementary schools.

*Id.* at 293.

The School objected to the admission of Hibbert's deposition testimony. On appeal, the School argues that Hibbert's

testimony was unreliable because his statements lacked specificity, could not be empirically tested, and failed under *Daubert*[2] standards. The School also argues that Hibbert's opinion was unsupported and that his testimony was unnecessary to show that the School failed to implement its Plan.

The School relies upon Indiana Evidence Rule 702, which provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

■■■ Where an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of lay persons and that the witness possesses sufficient skill, knowledge, or experience in the field to assist the trier of fact to understand the evidence or to determine a fact in issue. *Lytle*, 696 N.E.2d at 469–70. However, when the expert's testimony is based upon scientific principles, the proponent of the testimony must also establish that the scientific principles upon which the testimony rests are reliable. *Id.* (citing Ind. Evidence Rule 702(b)).

We conclude that Hibbert's expert opinion is not governed by scientific principles and, therefore, is not subject to Indiana Evidence Rule 702(b)'s reliability requirements. His opinion was based solely on his knowledge and experience and his review of the facts surrounding Juan's choking. Hibbert's expert opinion was based on specialized knowledge and not scientific principles.

■■■ The School also argues that Hibbert's experience was "somewhat limited." Appellant's Br. p. 30. "[T]he specific knowledge of an expert witness is neither determinative of the witness' qualification as an expert nor the admissibility of his opinion into evidence." *McIntosh v. Cummins*, 759 N.E.2d 1180, 1185 (Ind.Ct.App. 2001), *trans. denied.* "A witness' competency is determined by his knowledge of the subject matter generally, and his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion, not its admissibility." *Id.* Hibbert's experience and training went to the weight of his testimony not its admissibility.

Based upon his experience and training, Hibbert qualified as an expert. The subject matter of his testimony—school safety—was a topic beyond the knowledge of lay persons and assisted the trier of fact in understanding the evidence or determining a fact in issue. Consequently, Hibbert's expert opinion was admissible, and the trial court did not abuse its discretion in admitting it into evidence.

## II. School's Motion for Judgment on the Evidence

■■■ The next issue is whether the trial court properly denied the School's motion for judgment on the evidence on

**2.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

the issue of negligence.[3] "The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision." *Smith v. Baxter*, 796 N.E.2d 242, 243 (Ind.2003). Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." *Id.* (quoting Ind. Trial Rule 50(A)). We look only to the evidence and the reasonable inferences drawn most favorable to the non-moving party. *Id.* The motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

Negligence is comprised of the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by that breach. *McClyde v. Archdiocese of Indianapolis*, 752 N.E.2d 229, 232 (Ind. Ct.App.2001). In cases involving an alleged breach of a school's duty owed to its students, Indiana courts have imposed a standard of care that is the level of care an ordinary, prudent person would exercise under the same or similar circumstances. *Id.* "Because there is 'some remote risk of injury in all human existence,' ... the duty imposed upon Indiana schools to protect their students has been necessarily defined by the specific circumstances of each case." *Id.* at 232–33 (quoting *Norman v. Turkey Run Cmty. Sch. Corp.*, 274 Ind. 310, 316, 411 N.E.2d 614, 617 (1980)).

The School focuses on the breach element and argues that there was a "complete lack of evidence" showing that it failed to confirm its conduct to the requisite standard of care. Appellant's Br. p. 35. According to the School, there was no evidence presented that the School violated a statutory duty or failed to do what other school corporations do to prepare for medical emergencies. Rosales argues that she presented evidence demonstrating the School failed to meet the standard of care by failing to ensure that its Plan was implemented, by failing to follow the procedures in the Plan, and by failing to properly train the staff to respond to medical emergencies.

Rosales presented evidence that the School developed a Plan pursuant to Indiana State Board of Education regulations. *See* 511 I.A.C. 4–1.5–7, 511 I.A.C. 6.1–2–2.5. Hailmann's Plan specifically required the school nurse to develop and coordinate a first aid team, coordinate an annual CPR and first aid training session, and provide a list of CPR trained individuals to the principal, Maitland. Prior to September 2006, the school nurse, Huskey, had never seen the School's Plan, and Maitland had never talked to her about the Plan or CPR training. Prior to September

---

**3.** Rosales argues that the School waived appeal of the denial of its motion for judgment on the evidence by thereafter presenting evidence. *See* Ind. Trial Rule 50(A)(6) ("A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such motion ... except that error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted."). However, the School renewed its motion for judgment on the evidence after the presentation of its evidence. A defendant does not waive appellate review of a trial court's denial of motion for judgment on the evidence under Trial Rule 50(A) made at close of plaintiff's case, even though after denial of motion the defendant presented evidence on his or her own behalf, if the defendant renews the motion for judgment on the evidence after he or she presented evidence. *Kelly v. Levandoski*, 825 N.E.2d 850 (Ind.Ct.App.2005), *trans. denied.*

2006, Huskey had not coordinated a first aid team, coordinated annual CPR training at Hailmann, or prepared a list of CPR trained individuals at Hailmann. Dr. Robert Stuart, an emergency room physician, testified that it was "clear" the staff was not properly trained in basic life support and that the staff did not perform proper procedures on a choking victim. Tr. p. 207. In Dr. Stuart's opinion, if the staff had been properly trained in basic life support and properly performed basic life support of Juan, Juan would have survived. Hibbert testified that, while no Indiana statutes require schools to have a certain percentage of staff to have training in CPR or first aid, in his opinion:

> the reasonable standard of care is that people who are involved in the supervision and have responsibility in a daily basis for children, will have reasonable levels of training in regards to those things that can and will occur. Particularly, a choking child. A choking child is a very common experience and particularly in elementary schools.

*Id.* at 293.

Given this evidence, it was for the jury to decide whether the School exercised the level of care an ordinary, prudent person would exercise under the same or similar circumstances. The trial court properly denied the School's motion for judgment on the evidence regarding negligence.

### III. Rosales's Motion for Judgment on the Evidence

The next issue is whether the trial court properly granted Rosales's motion for judgment on the evidence on the issue of contributory negligence. Again, "[t]he standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision." *Baxter*, 796 N.E.2d at 243. Judgment on the evidence is proper only "where all or some of the issues … are not supported by sufficient evidence." *Id.* (quoting T.R. 50(A)). We look only to the evidence and the reasonable inferences drawn most favorable to the non-moving party. *Id.* The motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

The School argues that there was sufficient evidence for the issue of Juan's contributory negligence to be presented to the jury. "Indiana law requires that contributory negligence on the part of the plaintiff bars any recovery against government actors." *Clay City Consol. Sch. Corp. v. Timberman*, 918 N.E.2d 292, 300 n. 6 (Ind.2009). Contributory negligence is "the failure of a plaintiff to exercise the reasonable care an ordinary person would for his own protection and safety." *Penn Harris Madison School Corp. v. Howard*, 861 N.E.2d 1190, 1193 n. 1 (Ind.2007). "Indiana law recognizes a rebuttable presumption that children between the ages of seven and 14 are incapable of contributory negligence." *Timberman,* 918 N.E.2d at 297. "[C]hildren in this age group are required to exercise due care for their own safety under the circumstances of children of like age, knowledge, judgment, and experience." *Id.*

The evidence demonstrated that Juan, a nine-year-old child, was eating in the school cafeteria when he choked on a corn dog. A few minutes before Juan choked, Muller warned Juan and other boys at his table to calm down and eat because they were joking around and laughing. According to Muller, the boys then calmed down. A "minute or so" later, a child approached Muller and told him that Juan was choking. Tr. p. 385. Apparently, another child

had made a duck face with Pringles, and Juan laughed and choked on his food.

The presumption is that Juan was not contributorily negligent, and we conclude that the School presented no evidence to rebut that presumption. We emphasize that the only evidence of Juan's conduct at the time he choked was that he laughed at another child. There was no substantial evidence presented that Juan failed to exercise the reasonable care an ordinary nine-year-old boy of like age, knowledge, judgment, and experience would for his own protection and safety. Because there was no substantial evidence of contributory negligence, the trial court properly granted Rosales's motion for judgment on the evidence regarding the School's contributory negligence defense.

### IV. Jury Instructions

The final issue is whether the trial court properly instructed the jury regarding negligence. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction: (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind.2002). The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Id.* When an instruction is challenged as an incorrect statement of the law, however, appellate review of the ruling is de novo. *Id.* at 893–94.

"Jury instructions are to be considered as a whole and in reference to each other." *Timberman*, 918 N.E.2d at 300. "Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Penn Harris Madison*, 861 N.E.2d at 1195 (quoting *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001)).

The first instruction at issue here is Instruction No. 22, which provided:

Plaintiff has the burden of proving the following three (3) elements by a preponderance of the evidence:

1. That Defendant was negligent in any of the following ways:

 A. Failed to implement and monitor a system for the provision of health services and emergency care at Hailmann Elementary;

 B. Failed to properly or timely train staff at Hailmann Elementary;

 C. Failed to assemble a First Aid team at Hailmann Elementary;

 D. Failed to prepare for a foreseeable medical emergency at Hailmann Elementary;

 E. Failed to supervise those who had the responsibility to provide health services and emergency care at Hailmann Elementary.

 Plaintiff need prove only one of these allegations above and not all of them.

2. That the negligence of the Defendant was a proximate cause of Plaintiff's claimed injuries; and

3. That Plaintiff suffered damages as a result of the injuries.

As I have stated, the Plaintiff must prove these propositions; the Defendant has no burden of disproving them.

App. p. 94. The other instruction at issue here is Instruction No. 26, which provided:

There was in effect at the time of the Plaintiff's injury a Crisis Prevention Intervention Plan prepared by the Defendant, LaPorte Community School Corporation for Hailmann Elementary.

Among the provisions of the Plan are the following:

- In-service the school staff regarding the Crisis Plan. *Complete by September 5
- Develop and coordinate a First Aid Team
- Coordinate annual CPR and First Aid training
- Provide a list of CPR trained individuals to Incident Management Team Coordinator

You may consider the violation of one or more of these together with all of the other facts, testimony, evidence and the Court's instructions in deciding whether and to what extent, if any, Defendant was negligent at the time in question. While you may consider this, you cannot use it to set a higher duty than otherwise required by law.

*Id.* at 95.

■■■ The School argues that these instructions were not correct statements of the law because they allowed the jury to base its finding on considerations other the proper standard of care. According to the School, the proper standard of care is that of ordinary and reasonable care, and the instructions incorrectly suggested that the Plan determined the standard of care and a violation of the Plan was a violation of the standard of care.

In support of its argument, the School relies on *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891 (Ind.2002), where a customer brought a slip and fall action against Wal–Mart. Over Wal–Mart's objection, the trial court instructed the jury that:

There was in effect at the time of the Plaintiffs injury a store manual and safety handbook prepared by the Defendant, Wal–Mart Stores, Inc., and issued to Wal–Mart Store, Inc. employees. You may consider the violation of any rules, policies, practices and procedures contained in these manuals and safety handbook along with all of the other evidence and the Court's instructions in deciding whether Wal–Mart was negligent.

The violation of its rules, policies, practices and procedures are a proper item of evidence tending to show the degree of care recognized by Wal–Mart as ordinary care under the conditions specified in its rules, policies, practices and procedures.

*Wal–Mart,* 774 N.E.2d at 893. After the jury entered a verdict for Wright, Wal–Mart appealed. On appeal, our supreme court held that the second paragraph of the instruction was improper.

The second paragraph of the instruction told the jurors that because Wal–Mart has established certain rules and policies, those rules and policies are evidence of the degree of care recognized by Wal–Mart as ordinary care. But Wal–Mart is correct that its rules and policies may exceed its view of what is required by ordinary care in a given situation. Rules and policies in the Manual may have been established for any number of reasons having nothing to do with safety and ordinary care, including a desire to appear more clean and neat to attract customers, or a concern that spills may contaminate merchandise.

The law has long recognized that failure to follow a party's precautionary steps or procedures is not necessarily failure to exercise ordinary care.

*Id.* at 894. Additionally, the second paragraph improperly invited the jurors to "apply Wal–Mart's subjective view—as evidenced by the Manual—rather than an objective standard of ordinary care." *Id.* at 895. The court concluded that reversal was required as a result of the improper instruction.

While Instruction No. 26 as given to the jury here is similar to the instruction in *Wal–Mart*, the improper second paragraph of the *Wal–Mart* instruction is not found in Instruction No. 26. Unlike in *Wal–Mart*, Instruction No. 26 did not direct the jury to consider the School's Plan as evidence of ordinary care. Rather, the Instruction No. 26 allowed the jury to consider the Plan "together with all of the other facts, testimony, evidence and the Court's instructions in deciding whether and to what extent, if any, Defendant was negligent at the time in question." App. p. 95. Further, Instruction No. 26 specifically provided that the jury could not use the Plan "to set a higher duty than otherwise required by law." *Id.* We conclude that Instruction No. 26 was a correct statement of the law, and the trial court did not err by giving Instruction No. 26.

 As for Instruction No. 22, we first note that it is based on former Indiana Pattern Jury Instruction No. 9.03.[4] Although our supreme court has not formally approved the Indiana Pattern Jury Instructions for use, it has recognized their existence and given them some preferential status. *Timberman*, 918 N.E.2d at 295. The pattern instruction provided, in pertinent part:

The plaintiff has the burden of proving the following propositions by a preponderance of the evidence:

*[Here set forth the elements of the plaintiff's cause of action, tailored to reflect the particular factual disputes raised by the evidence.]*

\* \* \* \* \* \*

As I have stated, the plaintiff must prove these propositions; the defendant has no burden of disproving them.

\* \* \* \* \* \*

Ind. Pattern Jury Instruction No. 9.03. The comments to the pattern instruction provided that "[a]llegations contained in the complaint or answer upon which there has been evidence should be set out in the instruction." Ind. Pattern Jury Instruction No. 9.03 cmt.

Instruction No. 22 directs the jury that Rosales must prove the following by a preponderance of the evidence:

That Defendant was negligent in any of the following ways:

A. Failed to implement and monitor a system for the provision of health services and emergency care at Hailmann Elementary;

B. Failed to properly or timely train staff at Hailmann Elementary;

C. Failed to assemble a First Aid team at Hailmann Elementary;

D. Failed to prepare for a foreseeable medical emergency at Hailmann Elementary;

E. Failed to supervise those who had the responsibility to provide health services and emergency care at Hailmann Elementary.

Plaintiff need prove only one of these allegations above and not all of them. App. p. 94.

The instruction does not mention the proper standard of care or clarify that Rosales was merely alleging the School failed to meet the proper standard of care by failing to perform one or more of these acts. This instruction allowed the jury to

---

4. This year, the Civil Instructions Committee of the Indiana Judges Association released revised pattern civil jury instructions, written in "plain English." *See Indiana Judge Association Announces Plain English Civil Jury Instructions Available on LexisNexis*, available at http://www.in.gov/judiciary/press/2010/0722.html (last visited August 24, 2010).

find the School negligent in the event it found the School had not, for instance, put together a First Aid team. However, as the Indiana Supreme Court has said, when discussing the policy manual of a large retail chain, a company's rules and policies may exceed what is required by ordinary care in any given situation. *Wal–Mart*, 774 N.E.2d at 894. "Rules and policies in [the company's] Manual may have been established for any number of reasons having nothing to do with safety and ordinary care . . . ." *Id.* Such is the case here. The jury should have been charged with determining if the School acted reasonably and with ordinary care notwithstanding what its entire safety and response Plan was or was not.

 Rosales also argues that any error in the instruction was harmless. "[E]ven if there is an error in a particular instruction, it does not require reversal unless the jury is misled as to the law in the case." *Timberman*, 918 N.E.2d at 300. The jury here was instructed to consider all of the "instructions as a whole and construe them in harmony with each other" and to "consider all of the instructions together, as a package" and not to "ignore any instructions, or any part of any instruction." Tr. pp. 848–49. The trial court also instructed the jury that:

> Negligence is a failure to do what a reasonably careful and prudent person would do under the same or similar circumstances or the doing of something that a reasonably careful or prudent person would not do under same or similar circumstances. In other words, negligence is the failure to exercise reasonable or ordinary care.

*Id.* at 852.

While we are reluctant to interfere in a case which has gone to jury verdict, we do so here because Instruction No. 22 given in this case misrepresents the standard of care to be considered in a negligence case. Although the jury was separately instructed on the proper standard of care, Instruction No. 22 then instructed the jury that the School's failure to perform one of the listed acts was negligence. The jury could have found that the School was negligent by failing to perform one of the acts listed in Instruction No. 22 without finding that the School failed to exercise reasonable or ordinary care. We conclude that the conflicting instructions misled the jury as to the law regarding the standard of care. Despite language in other instructions, we feel that the lowered bar for the plaintiff as a result of Instruction No. 22 demands a reversal.

## Conclusion

We conclude that the trial court did not abuse its discretion by admitting Hibbert's deposition testimony. Further, the trial court properly denied the School's motion for judgment on the evidence as to negligence and properly granted Rosales's motion for judgment on the evidence as to contributory negligence. However, we conclude that the jury was not properly instructed regarding negligence, and the erroneous instruction was reversible error. Consequently, we affirm in part, reverse in part, and remand for a new trial.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., concurs.

CRONE, J., concurs in part and dissents in part with opinion.

CRONE, Judge, concurring in part and dissenting in part.

I fully concur as to issues I, II, and III of the majority's opinion. With respect to issue IV, I agree with the majority that the trial court did not err in giving Instruction No. 26.

I must respectfully disagree, however, with the majority's conclusion that the trial court committed reversible error in giving Instruction No. 22. Unlike the erroneous instruction at issue in *Wal–Mart*, Instruction No. 22 does not attempt to define (either implicitly or explicitly) the relevant *standard of care*, but rather sets forth the allegations of *negligence* contained in Rosales's complaint. The jury was properly instructed on the relevant standard of care, and it was properly left for the jury to determine whether any of the instances of the School's alleged conduct constituted a failure to comply with the standard of care, i.e., negligence. I would hold that the trial court did not err in giving Instruction No. 22 and affirm the judgment in favor of Rosales. To hold otherwise would be to question the efficacy of ever using former Indiana Pattern Jury Instruction No. 9.03 (or its new equivalent, Model Civil Jury Instruction No. 507).