OPINION
BAKER, Judge.
In this case we consider an unprovoked tortious assault on an appellee-defendant South Bend Public Transportation Corporation (TRANSPO) bus. Here, the trial court granted summary judgment in favor of TRANSPO on appellant-plaintiff James Whitmore’s negligence complaint, determining that Whitmore’s action on the bus constituted contributory negligence. Whitmore now appeals, arguing that his actions were not contributory negligence and that he could not foresee that the man he sat next to on the bus would assault him. Under these circumstances, we find that there is a question of material fact as to whether Whitmore was contributorily negligent or incurred the risk of his assault. Therefore, we reverse and remand for further proceedings.

FACTS

TRANSPO is a public transportation corporation and is a government entity for purposes of the Indiana Tort Claims Act.[1] During the early morning hours of Saturday, September 3, 2011, Whitmore, his friend Steven Colnitis, Colnitis’ sister, Kara, and Kara’s fiance, Justin Pudenz, boarded a TRANSPO bus on Wayne Street in South Bend. Whitmore was a recent graduate of Notre Dame’s MBA program, and he was visiting Notre Dame to attend a football game that weekend. Whitmore had consumed four or five “vodka sodas” at a bar between the hours of 10:30 or 11:00 p.m. on September 2 and 2:00 or 2:15 on September 3, before getting on the TRANSPO bus. Appellant’s App. at 54. He “definitely had ... a buzz from the alcohol.” Id.
The bus was very crowded, with almost every seat occupied and several people standing up. As Whitmore walked down the aisle, he tripped over something but did not fall to the ground. Whitmore turned around and saw a man[2] sitting down with his legs stretched out in the aisle. Whitmore “saw him and he was immediately engaging with” Whitmore, which led Whitmore to believe that he “was the person [who had] just made contact with” Whitmore. Id. at 69-70. The *996 man called Whitmore an “idiot or dumbass or that kind of thing” and laughed. Id. at 71. Whitmore perceived that the man was a “tough guy” or “macho.” Id. at 72-73. Whitmore also perceived that the man was a bully.
Whitmore sat down next to the man and also in the vicinity of Whitmore’s friends. After Whitmore sat down next to him, “nearly shoulder to shoulder,” the man “kept talking ... to [the man’s] girlfriend” seated on the other side of him. Id. at 79-80. Whitmore heard the man say, “This guy’s coming and sitting down next to me, you know, I’m just like tired of this.” Id. at 80. Whitmore heard that and interpreted it to refer to Whitmore “being in [the man’s] space.” Id. Whitmore thought that the man’s behavior was “bizarre.” Id. Whitmore did not move from his seat. The man then turned to Whitmore and said, “You’re f* * *ing with the wrong one.” Id. at 81. And Whitmore responded, “I’m not scared of you.” Id. Whitmore “did not think of [the man] as a credible threat to [him] physically.” Id. at 83. Colnitis heard what sounded like a “verbal altercation” behind him between Whitmore and the man sitting next to him. Id. at 115. Colnitis heard the men “verbally kind of bashing each other and the situation escalat[ed] very quickly.” Id. at 115-16.
When Whitmore turned and began talking to his friends, the man stood up and punched Whitmore in the face. Colnitis intervened, and the man placed Colnitis in a choke hold. Whitmore attempted to pull the man away from Colnitis, but the man’s girlfriend intervened and pushed Whitmore back into a seat. At some point, Colnitis and Whitmore attempted to push the man off the bus, but they were unsuccessful. The man then hit Whitmore again in the eye, breaking Whitmore’s orbital bones. The assailant and his girlfriend fled the bus. Whitmore received emergency medical treatment for his fractured orbital bone. At the hospital, a health care provider administered a blood alcohol content test, which indicated that Whit-more’s blood alcohol content was .126. That reading was taken at least one-half hour after Whitmore had last consumed an alcoholic beverage that morning.
Whitmore filed a complaint against TRANSPO alleging that it was “negligent for failing to provide a safe environment for its invitees.” Id. at 3. TRANSPO moved for summary judgment alleging that it was entitled to summary judgment because it is a governmental entity and the doctrines of contributory negligence and incurred risk bar Whitmore’s claims against it as a matter of law. Following a hearing, the trial court entered summary judgment in favor of TRANSPO. This appeal ensued.

DISCUSSION AND DECISION

I. Standard of Review

When we review the grant or denial of a summary judgment motion, we apply the same standard as the trial court. Kroger Co. v. Plonski, 930 N.E.2d 1, 4-5 (Ind.2010). Summary judgment is appropriate only where the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party, and all doubts concerning the existence of a material issue must be resolved against the non-moving party. Id. Nevertheless, the trial court’s grant of summary judgment “enters appellate review clothed with a presumption of validity,” and the appellant bears the burden of demonstrating that the trial court erred. Trustcorp Mortg. Co. v. Metro Mortg. Co. Inc., 867 N.E.2d 203, 211 (Ind.Ct.App.2007). Finally, if the *997 trial court’s grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. Beck v. City of Evansville, 842 N.E.2d 856, 860 (Ind.Ct.App.2006).[3]

II. Contributory Negligence

When a tort claim is brought against a governmental entity such as TRANSPO, the common law defense of contributory negligence remains applicable under Indiana Code section 34-51-2-2. Thus, if a plaintiff is negligent to even a small degree and that negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to his action; this is true even though as against nongovernmental entities, any fault of a plaintiff will only operate to reduce the damages he might obtain. Funston v. School Town of Munster, 849 N.E.2d 595, 598 (Ind.2006). The trial court determined that Whitmore’s actions, namely attempting to remove the assailant from the bus, was contributory negligence as a matter of law. We disagree.
A plaintiff is contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety. Negligence depends upon the lack of reasonable care that an ordinary person would exercise in like or similar circumstances. Id. at 598. Put another way, contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise. Id. Generally, contributory negligence is a question of fact for the jury to decide. It will only be a question of law appropriate for summary judgment if the facts are undisputed and only a single inference can be drawn therefrom. Id. at 599.
Here, the undisputed facts are as follows: Whitmore consumed four or five alcoholic beverages before getting on the bus. While boarding the bus, Whitmore believes he may have accidentally tripped over his assailant. Whitmore sat in the seat next to his assailant “nearly shoulder to shoulder,” and the man “kept talking ... to [the man’s] girlfriend” seated on the other side of him. Appellant’s App. p. 79-80. Whitmore heard the man say, “This guy’s coming and sitting down next to me, you know, I’m just like tired of this.” Id. at 80. Whitmore did not move from his seat. The man turned to Whitmore and said, “You’re f* * *ing with the wrong one.” Id. at 81. Whitmore responded, “I’m not scared of you.” Id. Whitmore turned and began talking to his friends. At that point, the man stood up and punched Whitmore in the face. Id. at 86. Colnitis intervened, and the man placed Colnitis in a choke hold. Id. at 89. At some point, Colnitis and Whitmore attempted to push the man off the bus, at which point the man then hit Whitmore again in the eye, breaking Whitmore’s orbital bones. Id. at 96.
More than one inference might be drawn from these facts. For instance, a factfinder might determine that a reasonably prudent person might have acted as Whitmore did when he told this “bully” that he was not scared of him. Id at 81. Accordingly, we question the wisdom of determining as a matter of law that an individual is contributorily negligent when he is not the first aggressor in an altercation, but simply fails to meekly walk away from an individual that is violently dis *998 posed. Therefore, we find that a question of material fact exists as to whether or not Whitmore’s actions constituted contributory negligence.

III. Incurrence of Risk

The trial court also determined that Whitmore had incurred the risk of his injuries as a matter of law. TRANSPO argues that Whitmore did indeed incur the risk of his injuries because Whitmore knew or should have known that his words and actions risked provoking a physical altercation and serious physical injury.
Incurred risk is a defense to a claim of negligence, separate and distinct from the defense of contributory negligence. Power v. Brodie, 460 N.E.2d 1241, 1243 (Ind.Ct.App.1984). “By definition, the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon a course of conduct with knowledge of the circumstances.” Id. An incurred risk must be voluntary. Richardson v. Marrell’s Inc., 539 N.E.2d 485, 487 (Ind.Ct.App.1989). Concerning the voluntariness of incurring this risk, this court has said:
The very essence of incurred risk is the conscious, deliberate, and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge ...
Id. (emphasis in original).
Here, the trial court determined that Whitmore incurred the risk of his injuries by looking at only a fraction of the circumstances that lead to Whitmore’s injury. More particularly, Whitmore did in fact help to push the assailant off the bus, but only after he had already been assaulted once. Id. While the trial court determined that Whitmore “certainly recognized the risk of retaliation when he engaged in the conscious and deliberate course of conduct to attempt to throw the assailant off the bus,” we cannot agree. Appellant’s App. p. 277. We cannot say that one, as a matter of law, incurs the risk of assault when he defends himself. Therefore, we determine that there is a question of material fact as to whether Whitmore incurred the risk of assault.
We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.
CRONE, J., concurs, and NAJAM, J., dissents with opinion.

. Ind. Statute § 34-13-3-1 et seq. The Indiana Tort Claims Act specifically includes public transportation corporations.

. Whitmore's assailant fled the scene before he could be apprehended, and he has not been identified to date.

. TRANSPO did not provide an argument as to its lack of negligence. While this court may affirm on any theory or basis in the record, the parties have not designated any evidence to develop this argument thus far.