

**FILED**

Apr 13 2017, 7:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kory T. Bell
Federico & Bell
Hagerstown, Indiana

Richard Andrew Young
Greensburg, Indiana

ATTORNEYS FOR APPELLEE –
NEW CASTLE COMMUNITY
SCHOOL CORPORATION

John C. Trimble
Neal Bowling
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wyatt Severance, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> New Castle Community School Corporation a/k/a New Castle Career Center, <br><br> and <br><br> Turner Melton, <br><br> *Appellees-Defendants* | April 13, 2017 <br><br> Court of Appeals Case No. 33A01-1609-CT-2088 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Kit C. Dean Crane, Judge <br><br> Trial Court Cause No. 33C02-1504-CT-23 |

**Baker, Judge.**

[1] In 2013, Wyatt Severance and Turner Melton were both enrolled in a vocational education program operated by the New Castle Career Center, which is administered through the New Castle Community School Corporation (the "School"). A physical altercation between the two students resulted in a serious leg injury to Severance, who filed a civil complaint against the School, alleging negligence. The School moved for summary judgment on two grounds: first, that Severance was contributorily negligent in bringing about his injuries, thereby barring any recovery, and second, that the School did not breach its duty to Severance. During the summary judgment stage, Severance designated an expert affidavit, which the School moved to strike. The trial court granted the School's motion to strike and the School's motion for summary judgment. Finding that the trial court erred in granting the School's motion to strike and that there are genuine issues of material fact as to whether the School breached its duty and whether Severance was contributorily negligent precluding summary judgment, we reverse and remand.

## Facts[1]

[2] In the fall of 2013, Severance and Melton were two of sixteen students in the School's building trades program. Severance, who attended Hagerstown High School, was seventeen years old and a first year in the program; Melton, who

---

[1] We held oral argument on March 23, 2017, at Indiana University East in Richmond. We thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students for their hospitality and thoughtful post-argument questions.

attended Blue River Valley High School, was nineteen years old and a returning second year. The program took place at a residential home construction site; on school days, the students drove from their respective schools to the construction site and worked for three hours each afternoon. The teacher, Trevor Stout, who had taught in the program for ten years prior to this incident, would assign tasks, and the students would disperse throughout the site to work on them. John Edington was Stout's aide. Stout created a structure where second-year students would give directions to first-year students.

[3] Students described Melton as a "hothead" with anger issues, and they would avoid Melton because of his verbal abuse and harassment. Appellant's App. Vol. II p. 89, 110-12, 114. The students believed that Melton enjoyed picking fights with other students. One student had asked Stout whether he could be kept separate from Melton because of Melton's verbal abuse, personal interactions, physical size, and attitude; Stout granted the student's request. Stout remembered Melton as a bossy and dominant person in the group. He recognized that Melton would become frustrated if Stout did not answer his questions to his satisfaction, and he saw Melton throw tools down and raise his voice on the job site.

[4] Severance and Melton did not interact before their altercation. During the program, Severance observed Melton belittling his work partners and classmates in the presence of others, ordering other students to go to the tool shed to get his tools, and taking credit for other students' work. Severance did not observe Melton make physical contact with anyone in the program; he did

not know whether Melton had been involved in a physical altercation with another student in the program or at Blue River High School; and he was not aware of Melton making threats of physical harm to other students.

[5] Around 12 p.m. on November 26, 2013, Melton stole Severance's bag of sunflower seeds out of Severance's hands as Severance was waiting for class to begin. Stout assigned six students, including Severance and Melton, to clean the basement. Melton came down the steps to the basement giving orders to the other students; he told the other students that they were not working hard enough. Severance asked Melton, "What is your issue, man?" and said to him, "Hey, I just want you to stop." Appellant's App. Vol. II p. 80-81, 113. Melton approached and started threatening Severance, asking him, "What are you going to do about it?" Appellant's App. Vol. II p. 80-81. Melton pushed Severance back about seven steps and pinned him against a wall while shoving a broom to Severance's throat. Severance said, "I don't know what I'm going to do about it." Appellant's App. Vol. II p. 81.

[6] Melton then hit Severance with the broom. Severance managed to get the broom from Melton and swung the brush end of it at Melton from about six feet away. Melton then knocked the broom from Severance's hands and ran toward Severance; Severance did not run toward Melton. Melton got behind Severance, blocked his vision, and wrapped his right leg around Severance's left leg and pulled Severance over. Severance felt a "pop." Appellant's App. Vol. II p. 83. He collapsed on the ground and blacked out. Severance suffered a tibial plateau fracture that required surgery and resulted in a permanent injury.

Melton walked away, left the basement, and left the job site. The altercation lasted no more than two and one-half minutes.

[7]     Severance filed a civil complaint against Melton and the School, alleging negligence.[2] On April 19, 2016, the School moved for summary judgment on two grounds: first, that Severance was contributorily negligent in bringing about his injuries, thereby barring any recovery, and second, that the School did not breach its duty to Severance. On May 13, 2016, Severance opposed the School's motion, requested a hearing, and designated evidence, including an expert affidavit of Dr. Jean Peterson. The trial court scheduled the summary judgment hearing for August 5, 2016.

[8]     On August 1, 2016, the School moved to strike Dr. Peterson's affidavit, arguing that it contained conclusory opinions unsupported by facts or evidence, lacked explanation of the methodologies that she used to reach her conclusions, and included a conclusion of law that the School was negligent. On August 5, 2016, Severance opposed the School's motion to strike; also on August 5, 2016, the trial court struck the affidavit without argument. During the summary judgment hearing, Severance requested the court to reconsider its strike, but the court did not grant his request. On August 8, 2016, the trial court entered summary judgment in favor of the School. Severance now appeals.

---

[2] Melton is not a party to this appeal.

## Discussion and Decision

Severance presents two issues on appeal: first, that the trial court erred by striking Dr. Peterson's affidavit, and second, that the trial court erred by granting summary judgment.

## I.    Motion to Strike

Severance argues that the trial court erred by striking Dr. Peterson's affidavit because the School's motion to strike was untimely and because striking it was against the logic and facts before the court.

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *E.g., Morse v. Davis*, 965 N.E.2d 148, 155 (Ind. Ct. App. 2012). We will reverse only if the trial court's decision "is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

Severance designated Dr. Peterson's affidavit as evidence in his opposition to summary judgment in order to help the trial court understand the nature and culture of bullying. In her affidavit, Dr. Peterson presented fifteen ways through which the altercation could have been prevented. She discussed bullying culture, how it was present in this school, and the appropriate level of supervision for this group of students. Her curriculum vitae, which outlines her experience, training, and education, was attached to her affidavit.

[13] When the School filed its motion to strike the affidavit and argued in front of the trial court, it contended that Dr. Peterson lacked proper credibility as an expert. At oral argument, the School argued that Dr. Peterson's affidavit was not relevant to this case because it did not address the dispositive issues, one of which, according to the School, is whether the School failed to adequately supervise the program in which the students were participating. We agree with the School that one of this case's dispositive issues is whether the School provided an appropriate level of supervision to the students, but unlike the School, we find Dr. Peterson's affidavit directly relevant to this question. Dr. Peterson presented fifteen ways or actions that the School could have taken to provide adequate supervision and possibly prevent the altercation and injury. She also discussed what the teachers should have been aware of—such as the group's interpersonal interactions and Melton's behavior—in order to provide that supervision. Therefore, Dr. Peterson's expertise could assist the trial court in addressing the dispositive issues of the case. We conclude that the trial court erred in striking Dr. Peterson's affidavit.

[14] Because we conclude, based on the substantive merits of the issue, that the trial court erred in striking the affidavit, we need not discuss Severance's other argument that the School's motion to strike was untimely.

# II. Summary Judgment

Severance argues that summary judgment should not have been granted because the School did not negate any element of Severance's claims and because Severance was not contributorily negligent as a matter of law.

Our standard for summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is rarely appropriate in negligence actions because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person. *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 235 (Ind. Ct. App. 2014), *abrogated on other grounds.* This standard is best applied by a jury after hearing all of the evidence. *Id.*

# A. Negligence

The tort of negligence is comprised of the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by that breach. *Ashcraft v. Ne. Sullivan Cty. Sch. Corp.*, 706 N.E.2d 1101, 1103 (Ind. Ct. App. 1999). To prevail on a motion for summary judgment in a negligence action, the defendant must demonstrate that the undisputed material facts negate at least one of the elements essential to plaintiff's claim or that the claim is barred by an affirmative defense. *Id.*

Indiana schools' duty to protect their students "has been necessarily defined by the specific circumstances of each case." *McClyde v. Archdiocese of Indianapolis*, 752 N.E.2d 229, 233 (Ind. Ct. App. 2001). "[S]ummary judgment is especially inappropriate where the critical question for resolution is whether the defendant exercised the requisite degree of care under the factual circumstances." *Id.* (citation and quotation marks omitted). To show that the School breached its duty to him, Severance is required to show that (1) Melton had a propensity toward violence; (2) the School was aware of Melton's propensity; (3) the School failed to adequately supervise the students; and (4) the School's inadequate supervision resulted in Severance's injuries. *Id.*

In *Miller v. Griesel*, 261 Ind. 604, 613, 308 N.E.2d 701, 707 (1974), a case involving a child's injuries sustained during recess at school, our Supreme

Court recognized a duty for school authorities to exercise reasonable care for the safety of their children. Our Supreme Court wrote:

> Of course what constitutes due care and adequate supervision depends largely upon the circumstances surrounding the incident such as the number and age of the students left in the classroom, the activity in which they were engaged, the duration of the period in which they were left without supervision, the case of providing some alternative means of supervision and the extent to which the school board has provided and implemented guidelines and resources to insure adequate supervision.

*Id.* The court held that the trial court's grant of judgment on the evidence at the end of plaintiff's case was proper due to the plaintiff's failure to present a prima facie showing of the school's breach of duty. *Id.*

[20] In *McClyde*, a student made a comment to his classmate, who then physically attacked the student. 752 N.E.2d at 231. The student filed a civil complaint against the school, and when he opposed summary judgment, he filed affidavits from his parents. *Id.* The school filed a motion to strike the mother's affidavit, alleging that it was based on hearsay, inadmissible opinion testimony, and testimony lacking a proper foundation for personal knowledge. *Id.* at 234. The trial court did not strike any of the statements in question, which resulted in conflicting designated evidence. *Id.* at 235. This Court found that the affidavit created genuine issues of material fact, and we reversed the trial court's grant of summary judgment in favor of the school. *Id.*

Under *Miller*, the requisite degree of due care in this case is dictated by the specific circumstances—the number and age of the students in the program, the work in which they were engaged, the duration of the period in which they were left without supervision, and the guidelines and resources provided to insure adequate supervision. We recognize that this vocational program provides its students with the opportunity to work independently in a professional setting. Nonetheless, a question of fact remains as to whether the degree of supervision in the School was adequate.

Designated evidence exists as to what Stout knew about Melton's behavior and the culture that pervaded the vocational program, making it possible for Stout or the School to be unaware of what an adequate level of supervision would even be for this program. Brad Gregory, one of the other students who was working in the basement, stated that he "never said anything to Mr. Stout," that he could tell that Stout "was very busy and this led me to try most things without bothering him," and that "[a] lot went on behind Mr. Stout's back that we did not tell him about, for example, e-cigarettes, smokeless tobacco, and cigarettes." Appellant's App. Vol. II p. 111. Gregory also stated that "[i]f at all possible, everyone in the class, including myself[,] would avoid Turner Melton because he would be so verbally abusive . . . ." *Id.* at 110. Stout stated that Melton would sometimes become frustrated and "throw tools down," *id.* at 132; he also stated that he "never had any notice that Turner Melton posed as a physical threat to the safety of others in the program." Appellee's App. Vol. II p. 39. Accordingly, we find that a genuine issue of material fact exists as to

whether the School provided adequate supervision. This issue should be addressed by the trier of fact.

# B. Contributory Negligence

Finally, we address the School's argument that because it is a government entity, and the common law defense of contributory negligence remains applicable for governmental defendants, even a slight degree of negligence on the part of Severance operates as a total bar to his action for damages against the School. We disagree.

Contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise. *Whitmore v. S. Bend Pub. Transp. Corp.*, 7 N.E.3d 994, 997 (Ind. Ct. App. 2014). Generally, it is a question of fact for the jury to decide. *Id.* It will only be a question of law appropriate for summary judgment if the facts are undisputed and only a single inference can be drawn therefrom. *Id.*

This Court has recently discussed whether contributory negligence applies to cases such as this one. In *M.S.D. of Martinsville*, we noted that

> in a society where bullying is a pervasive and confusing problem,
> especially among young, school-aged children, we question
> whether the issue of contributory negligence can be properly
> resolved as a matter of law, especially when, as here, a victim is
> not the initial aggressor in an altercation, but merely fails to
> meekly walk away from an attacker who is violently disposed,

and especially where the victim appears to have been unaware that the attacker was armed.

9 N.E.3d at 248. This Court found that because the facts were subject to more than one reasonable inference, the trial court did not err in finding that the issue of the victim's contributory negligence is most appropriately a matter for the jury. Similarly, here, Severance cannot be found as a matter of law contributorily negligent based on the actions that he took. A factfinder might reasonably determine that a reasonably prudent person might have acted as Severance did during this incident; a factfinder might also reasonably determine that Severance was not an initial aggressor in the altercation, but a person who merely failed to meekly walk away from Melton. Accordingly, we find that there are genuine issues of material fact as to whether Severance was contributorily negligent, and that the determination is better left to the jury.

[26] For these reasons, we conclude that the trial court erred when it granted the School's motion to strike Dr. Peterson's affidavit and the School's motion for summary judgment. Dr. Peterson's affidavit relates to a dispositive issue in this case. Further, genuine issues of material fact exist as to whether the School breached its duty to protect Severance and whether Severance was contributorily negligent in a manner which proximately caused his injuries.

[27] The judgment of the trial court is reversed and remanded for further proceedings.

Robb, J., and Altice, J., concur.